IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-02434-PAB-TPO

DOLLY DOW, and
VIRGINIA SAKAL, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

LUMEN TECHNOLOGIES, INC.,
LUMEN EMPLOYEE BENEFITS COMMITTEE,
CENTURYLINK INVESTMENT MANAGEMENT COMPANY,
KATHLEEN M. LUTITO,
STATE STREET GLOBAL ADVISORS TRUST, CO., and
JOHN DOES 1–5,

    Defendants.

---

# ORDER

---

This matter is before the Court on the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Louisiana, Monroe Division [Docket No. 26]. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On September 4, 2024, plaintiffs Dolly Dow and Virginia Sakal filed suit in this case. Docket No. 1. In the complaint, plaintiffs make the following allegations. Lumen Technologies Inc., formerly known as CenturyLink Inc. ("CenturyLink"), is a telecommunications company. *Id.* at 6–7, ¶ 14. Prior to 1999, CenturyLink had multiple pension plans for its legacy employees. *Id.* at 5, ¶ 9. One of these plans was the

Pacific Telecom Retirement Plan ("PTI Plan"). *Id.* On January 1, 1999, CenturyLink employees became eligible to participate in the PTI Plan, which was later renamed the Lumen Combined Pension Plan ("the Plan") as a result of multiple mergers. *Id.*

Dolly Dow is a Colorado resident who began working for CenturyLink in 1981. *Id.* at 6, ¶ 12. Ms. Dow retired from CenturyLink in 2014, at which time she began receiving pension payments. *Id.* Virginia Sakal is a New Mexico resident who also began working for CenturyLink in 1981. *Id.*, ¶ 13. Ms. Sakal retired from CenturyLink and began receiving pension payments in 2015. *Id.*

On October 19, 2021, Lumen transferred over $1.4 billion of its pension obligations to Athene Annuity and Life Co. and Athene Annuity & Life Assurance Company of New York (collectively "Athene"). *Id.* at 2–3, ¶ 3. This transfer affected approximately 22,600 Lumen retirees and their beneficiaries, including plaintiffs. *Id.* Plaintiffs allege that Athene is "a highly risky private equity-controlled insurance company with a complex and opaque structure." *Id.*

Plaintiffs maintain that defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, through the Athene transaction. *Id.* at 1–2, ¶ 1. Specifically, plaintiffs allege that each defendant acted as a fiduciary of the Plan under ERISA. *Id.* at 46, ¶ 117. Plaintiffs assert that defendants breached their fiduciary duties under 29 U.S.C. § 1104 because, although ERISA does not prohibit an employer from transferring pension obligations to an insurance company, fiduciaries must obtain the "safest annuity available." *Id.* at 2–3, ¶ 3 (quoting 29 C.F.R. § 2509.95-1). Plaintiffs claim that Athene was not the safest annuity available. *Id.* at 46, ¶ 120.

Plaintiffs also allege that Lumen hired defendant State Street Global Advisors Trust Co. ("State Street") to serve as an independent fiduciary for the Plan. *Id.* at 8–9, ¶ 18. One of State Street's responsibilities was to select an annuity provider for the transfer of Lumen's pension obligations that would comply with federal regulations. *Id.* Plaintiffs claim that, because State Street provided services to the Plan, State Street was a party in interest as defined by ERISA. *Id.* at 49, ¶ 131. As such, they claim that paying State Street to serve as an independent fiduciary violated 29 U.S.C. § 1106. *Id.* at 50, ¶¶ 133–34. Similarly, plaintiffs allege that Athene provided services to the Plan, that Athene was a party in interest, and that the transfer of pension obligations to Athene violated § 1106. *Id.* at 51, ¶¶ 139–40. Plaintiffs bring five claims based on defendants' alleged violations of § 1104 and § 1106. *Id.* at 46–53, ¶¶ 116–46. Plaintiffs bring their claims on behalf of themselves and a class of "all participants in the Lumen Combined Pension Plan (f/k/a CenturyLink Combined Pension Plan) and their beneficiaries since October 19, 2021, for whom the responsibility for plan-related benefit payments has been transferred to Athene Annuity and Life Co. or Athene Annuity & Life Assurance Company of New York." *Id.* at 43, ¶ 113.

On October 16, 2024, defendants filed their motion to transfer venue. Docket No. 26. Defendants claim that the Plan has a choice of venue provision that designates the United States District Court for the Western District of Louisiana as the exclusive venue for litigation over the Plan. *Id.* at 5. On November 8, 2024, plaintiffs responded, Docket No. 38, and defendants replied on November 20, 2024. Docket No. 40.

3

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). To warrant a transfer, the moving party must establish that: "(1) the action could have been brought in the alternate forum, (2) the existing forum is inconvenient, and (3) the interests of justice are better served in the alternate forum." *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991)).

"Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' . . . the clause may be enforced through a motion to transfer under § 1404(a)."[1] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Tex.*, 571 U.S. 49, 59 (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that

---

[1] "Although the Tenth Circuit has not spoken to the issue of whether a forum-selection clause in an ERISA-qualified plan is entitled to deference, each circuit court to address the issue has held that it is." *Dunn v. Sw. Airlines Co.*, No. 20-cv-3535-WJM-STV, 2021 WL 2416469, at *3 (D. Colo. June 14, 2021) (citing *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922 (6th Cir. 2014); *In re Mathias*, 867 F.3d 727, 734 (7th Cir. 2017)). "Additionally, the majority of district courts—including those within the Tenth Circuit— have held that forum-selection clauses are presumptively valid in the context of an ERISA plan document." *Id.* (citations omitted).

4

clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 62 (footnote omitted).  "[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63.

A mandatory forum-selection clause is presumed valid "unless the party challenging it clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (internal quotation and alterations omitted) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  A forum-selection clause is mandatory if it "contain[s] clear language showing that jurisdiction is appropriate only in the designated forum."  *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002) (citation omitted).  A forum selection clause is applicable if the dispute is within its scope based on "ordinary principles of contractual interpretation."  *Kelvion, Inc. v. PetroChina Canada, Ltd.*, 918 F.3d 1088, 1092 (10th Cir. 2019).

### III.  ANALYSIS

Defendants argue that, by participating in the Plan, plaintiffs agreed to the Plan's forum selection clause.  Docket No. 26 at 5–6.  Section 16.8(b) of the Plan states

> Except as the laws of the United States may otherwise require, any and all disputes relating to or arising under this Plan to enforce or interpret this Plan shall be brought by civil action and resolved only in United States District Court for the Western District of Louisiana (the "Court"), which shall have and retain continuing and exclusive jurisdiction over this Plan.  Each Participant and Beneficiary, by virtue of his or her participation in this Plan, irrevocably consents to the jurisdiction and venue in the Court and that any and all disputes shall be adjudicated solely by the Court, and further irrevocably waives any defense based on lack of venue, personal jurisdiction, forum non conveniens, transfer, priority doctrines, and any defense(s) of similar type or import.

Docket No. 26-2 at 76.

"Ordinary principles of contract interpretation govern the interpretation of an ERISA plan."[2] *Hennen v. Metro. Life Ins. Co.*, 2021 WL 5769529, at *5 (N.D. Ill. Dec. 6, 2021) (citing *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013)). The "plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." *Schkloven v. Hartford Life & Accident Ins. Co.*, 2022 WL 2869266, at *17 (D. Md. July 21, 2022) (quoting *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 220 (4th Cir. 2005), *aff'd*, 547 U.S. 356 (2006); *see also Miller*, 502 F.3d at 1250 ("In interpreting an ERISA plan, we examine the plan documents as a whole and, if unambiguous, construe them as a matter of law. . . . In order to determine whether a plan is ambiguous, we consider the common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." (internal quotation, citation, and alterations omitted)). This is because ERISA's "statutory scheme . . . is built around reliance on the face of

---

[2] The parties suggest that the forum selection clause should be construed pursuant Louisiana law because the Plan includes a provision which states that "the Plan shall be governed by and construed and administered in accordance with ERISA, the Code, and, to the extent applicable and where not inconsistent, the laws of the State of Louisiana," Docket No. 26-2 at 76; Docket No. 26 at 12; Docket No. 38 at 5 n.2; *but see Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1248 (10th Cir. 2007) ("We begin by holding that the district court erred in interpreting the Plan according to New Mexico law because ERISA pre-empts state rules of insurance contract interpretation."). "Because the Plan in this case 'was established under ERISA, federal common law rules of contract interpretation' must be applied in determining the meaning of any undefined Plan term." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 817 (10th Cir. 2010) (Briscoe CJ. concurring) (quoting *Santaella v. Metro. Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir. 1997)). However, the Court is unaware of any principles of contract interpretation under Louisiana law that would alter the Court's analysis of the forum selection clause in this order. Therefore, the issue is moot.

written plan documents."  *Schkloven*, 2022 WL 2869266, at *17 (quoting *U.S. Airways*, 569 U.S. at 100).  "Courts construe ERISA plans by 'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'"  *Hennen*, 2021 WL 5769529, at *5 (quoting *U.S. Airways*, 569 U.S. at 102).

Defendants argue that the terms "relating to" and "arising under" in the forum selection clause should be construed broadly to cover plaintiffs' claims.  Docket No. 26 at 12–13 (citing *Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009) ("The ordinary meaning of the phrase 'relating to' is broad."); *Am. Nat'l Prop. & Cas. Co. v. United Specialty Ins.*, 592 Fed. App'x 730, 742 (10th Cir. 2014) (unpublished) ("The words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'"); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274–75 (10th Cir. 2010)).  Defendants claim that, because plaintiffs "are seeking to enforce their purported rights – and the rights of 22,600 other former Plan participants – for the 'value' of their pension benefits under the Plan," it "cannot be disputed that every claim in the Complaint relates to and arises under the Plan."  *Id.* at 13.

The Court rejects defendants' arguments that plaintiffs' claims fall within the venue provision because they "relate to" or "arise under" the Plan.  First, the Court disagrees that plaintiffs' claims arise from a dispute "relating to" the Plan.  Defendants rely on *Oceanside Ten Holdings.com, LLC v. Mktg, Inc.*, No. 17-cv-02984-MSK-KMT, 2018 WL 2277004, at *2 (D. Colo. May 18, 2018), for the proposition that plaintiffs' claims need only be "sufficiently related to" the Plan to fall within the scope of the forum

7

selection clause.  Docket No. 26 at 13 (internal quotations and alterations omitted).  In that case, the court found that plaintiffs' tort claim for fraudulent inducement was sufficiently related to the parties' software sales agreement to be governed by the agreement's forum selection clause, which covered disputes that "arise under" or "relate to" the agreement.  *Oceanside Ten Holdings.com*, 2018 WL 2277004, at *2–3.  The court held that "a tort claim 'relates to' a contract if it is 'connected by reason of an established or discoverable relation' between the tort and the contract," and that the plaintiffs' fraudulent inducement claim "expressly refer[s] to the Plaintiffs' entry into the software sales agreement as the mechanism by which the Plaintiffs were injured."  *Id.* (quoting *Huffington v. T.C. Group, LLC*, 637 F.3d 18, 21–22 (1st Cir. 2011)).  However, the court determined that there was a "colorable argument" that the plaintiffs' claims for tortious interference with contract and tortious interference with prospective business relations were not governed by the forum selection clause because the "mechanism of injury for these claims is not the software sale itself, but, rather, actions that the Defendants took after the sale was fully completed."  *Id.* at *3.

      Here, plaintiffs' claims are more like the claims for tortious interference than the claims for fraudulent inducement in *Oceanside*.  Plaintiffs' injuries did not arise from the Plan itself.  Both parties acknowledge that plaintiffs have received all the benefits to which they are entitled under the Plan.  Docket No. 26 at 6 ("Plaintiffs continue to receive their pension amounts, in full, every month – just from Athene, not the Plan"); Docket No. 38 at 13 ("Plaintiffs have received all benefits due").  And the complaint makes clear that plaintiffs are no longer Plan participants.  *See* Docket No. 1 at 43, ¶ 113.  Instead, plaintiffs' claimed injury arises from the fact that their pension benefits

8

are not as secure as they should be under ERISA because their pension obligations were not transferred to the safest annuity available. The mechanism of their injury was not the creation or implementation of the Plan, but was the transfer of pension benefits to a third party, which would not have occurred if defendants had met their fiduciary obligations. Therefore, the Court finds that plaintiffs' claims do not sufficiently relate to the Plan to be governed by the forum selection clause. Second, although courts generally give broad constructions to the phrases "relating to" and "arising under," the Plan's venue provision is limited to "disputes relating to or arising under this Plan to enforce or interpret this Plan." Docket No. 26-2 at 76. Therefore, even if the Court were to find that plaintiffs' claims broadly relate to the Plan, the Court must still consider whether the claims seek to interpret or enforce the Plan.

Plaintiffs state that, under the plain language of the forum selection clause, only a subset of claims that seek to enforce or interpret the Plan must be brought in the Western District of Louisiana.[3] Docket No. 38 at 10. Plaintiffs argue that their claims do

---

[3] ERISA provides multiple causes of action for plan beneficiaries under 29 U.S.C. § 1132. Section § 1132(a)(1)(B) states that a civil action may be brought by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs argue that the forum selection clause's reference to disputes "relating to or arising under this Plan to enforce or interpret this Plan," Docket No. 26-2 at 76, indicates that it was intended to apply only to § 1132(a)(1)(B) claims. Docket No. 38 at 7. Plaintiffs assert that this interpretation is further supported by the Plan's summary plan description ("SPD"). *Id.* at 6–7. Plaintiffs claim that Plan beneficiaries generally do not receive complete copies of the Plan, but instead receive copies of the SPD pursuant to 29 U.S.C. § 1024(b)(1). *Id.* at 6. They argue that the current SPD informs beneficiaries that they must first exhaust their administrative remedies before they can file a case in the Western District of Louisiana "to enforce a benefit claim or to interpret the Plan." *Id.* Plaintiffs maintain that courts have found that ERISA's administrative exhaustion requirement does not apply to breach of fiduciary duty claims. *Id.* at 7 (citing *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir. 2006) (en banc)). As such, plaintiffs claim that the SPD demonstrates

9

not seek to "enforce or interpret" the Plan. *Id.* at 11. Instead, they maintain that the claims seek to enforce statutory rights under ERISA. *Id.*

Plaintiffs bring their claims pursuant to § 1132(a)(9).[4] *See, e.g.*, Docket No. 1 at 47, ¶ 122. Section 1132(a)(9) states that a civil action may be brought

> in the event that the purchase of an insurance contract or insurance annuity in connection with termination of an individual's status as a participant covered under a pension plan with respect to all or any portion of the participant's pension benefit under such plan constitutes a violation of part 4 of this title or the terms of the plan, . . . by any individual who was a participant or beneficiary at the time of the alleged violation . . . to obtain appropriate relief, including the posting of security if necessary, to assure receipt by the participant or beneficiary of the amounts provided or to be provided by such insurance contract or annuity, plus reasonable prejudgment interest on such amounts[.]

29 U.S.C. § 1132(a)(9) (footnote omitted). Courts have found that § 1132(a)(9) is an appropriate vehicle to bring claims against a fiduciary for alleged violations of § 1104

---

that the forum selection clause applies only to § 1132(a)(1)(B) claims. When the words of an ERISA plan "leave gaps," courts may consider "other manifestations of the parties' intent," such as the SPD. *US Airways*, 569 U.S. at 102. However, although the SPD shows that beneficiaries bringing claims under § 1132(a)(1)(B) for the denial of benefits must exhaust their administrative remedies and must bring their claims in the Western District of Louisiana, the SPD does not indicate whether other claims must also be brought in the Western District of Louisiana. Because the SPD does not address any claims other than benefits claims, it is not persuasive evidence of the parties' intent as to whether the forum selection clause applies to other claims.

[4] Plaintiffs also bring their claims pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3). *See* Docket No. 1 at 47, ¶ 122. Both provisions allow a beneficiary or participant of an ERISA plan to bring a civil action under certain circumstances. 29 U.S.C. §§ 1132(a)(2), 1132(a)(3). However, plaintiffs indicate that they are no longer participants or beneficiaries of the Plan after the transfer of their pension obligations to Athene. *See* Docket No. 38 at 13 (defendants "cannot deprive Plaintiffs of the *benefits* of continued participation in the Plan, including the protections afforded by ERISA and the federally funded PBGC, yet continue to subject Plaintiffs to the *burdens* of participation, such as binding them to the forum-selection clause" (citations omitted)). The Court will not address the issue of whether plaintiffs can bring claims under § 1132(a)(2) and § 1132(a)(3) even though they are no longer Plan participants. The Court will consider plaintiffs' claims under § 1132(a)(9) because it provides remedies for beneficiaries "at the time of the alleged violation." 29 U.S.C. § 1132(a)(9).

and § 1106.  *See, e.g.*, *Reilly v. Charles M. Brewer, Ltd. Profit Sharing Plan & Tr.*, 2006 WL 8447738, at *9 (D. Ariz. Feb. 7, 2006) ("former participants or beneficiaries of terminated pension plans [may] bring suit for a fiduciary breach involving the purchase of insurance contracts or annuities in connection with their termination as plan participants" (citing *Kayes v. Pacific Lumber*, 51 F.3d 1449 (9th Cir. 1995)); *Konya v. Lockheed Martin Corp.*, 2025 WL 962066, at *3–4 (D. Md. Mar. 28, 2025) (finding that plaintiffs had constitutional standing to bring breach of fiduciary duty claims based on their termination from ERISA plan and to pursue claims under § 1132(a)(9)).  The Court agrees that the complaint makes claims against defendants based on defendants' alleged violations of their fiduciary duties under ERISA.  Therefore, the Court must consider whether plaintiffs' statutory claims for alleged violations of defendants' fiduciary duties are governed by the Plan's forum selection clause, i.e., whether the statutory claims "relat[e] to or aris[e] under this Plan to enforce or interpret this Plan."  Docket No. 26-2 at 76.

Defendants argue that the Plan is central to plaintiffs' claims.  Docket No. 26 at 9.  They argue that plaintiffs "challenge a transaction undertaken by the Plan, in which the Plan transferred Plan assets to cover Plan liabilities" and that plaintiffs' "claims are premised on fiduciary responsibilities defined by the Plan."  Docket No. 40 at 2.  Defendants claim that plaintiffs bring claims to "enforce or interpret" the plan because (1) the claims "seek to recover the value of benefits established by the Plan," *id.* at 2–3, and (2) the claims require interpreting the Plan to "determine the identity of fiduciaries, determine the scope of their responsibilities, and then enforce those obligations."  *Id.* at 4.

11

The Court disagrees that plaintiffs bring claims "relating to . . . th[e] Plan to enforce or interpret th[e] Plan."  Docket No. 26-2 at 76.  First, the nature of the relief plaintiffs seek in their complaint indicates that they are not trying to enforce the Plan.  Plaintiffs request the following relief from the Court:

- Find and declare Defendants have breached their fiduciary duties and caused the prohibited transactions described above;
- Order disgorgement of all sums derived from the improper transaction;
- Order Defendants to post adequate security to assure receipt by Plaintiffs and class members of all retirement benefits covered by Athene annuities, plus prejudgment interest;
- Certify the proposed class, appoint each Plaintiff as a class representative, and appoint Schlichter Bogard LLP as Class Counsel;
- Award to the Plaintiffs and the class their attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;
- Order the payment of interest to the extent it is allowed by law; and
- Grant any other relief as the Court deems appropriate to remedy the ERISA violations.

Docket No. 1 at 53–54.  The relief plaintiffs seek does not involve Plan assets or requests payment from the Plan.  Moreover, the Plan is not a defendant in this case, and therefore, the Court lacks authority to order relief from the Plan.  *See Swepi, LP v. Mora Cnty., N.M.*, 81 F. Supp. 3d 1075, 1143 (D.N.M. 2015) ("A district court cannot enter a judgment purporting to bind nonparties over whom it does not have jurisdiction." (alterations omitted) (citing *Steans v. Combined Ins. Co. of Am.*, 148 F.3d 1266, 1271 (11th Cir. 1998)); *cf.*, *Cath. Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564 (9th Cir. 2008) (unpublished) (filing suit against ERISA plan as defendant).  Instead, the relief targets defendants individually and requires them, for example, to disgorge any ill-gotten gains they received through their alleged breach of their fiduciary duties.  Docket No. 1 at 53–54.  While the posting of security may be a form of "enforcing" the Plan because it is a means of ensuring that beneficiaries receive

12

the benefits to which they are entitled, the complaint asks defendants, not the Plan, to post the security.  Moreover, "the posting of security" is a statutory remedy under ERISA, 29 U.S.C. § 1132(a)(9), and is independent of other Plan obligations.  Therefore, the Court finds that plaintiffs' claims do not seek to enforce the plan; they seek to enforce ERISA's fiduciary obligations against defendants.

The Court also rejects defendants' argument that plaintiffs' claims seek to interpret the Plan such that they are governed by the forum selection clause.  Defendants provide no support for the proposition that, because the Court may need to consult the Plan to identify the Plan's fiduciaries, the Court must interpret the Plan.  Instead, although defendants may rely on the Plan as part of a defense that they were not fiduciaries and therefore did not violate ERISA, nothing about plaintiffs' claims requires the Court to interpret the Plan to resolve the dispute.  Instead, they require the Court to consider whether defendants' conduct violated the fiduciary obligations imposed by ERISA.  Therefore, under the plain text of the clause, applying the common and ordinary meaning of the terms employed, the Court finds that plaintiffs' claims are outside the scope of the forum selection clause.[5]

---

[5] Defendants argue that the forum selection clause governs plaintiffs' claims because it states that the Western District of Louisiana "shall have and retain continuing and exclusive jurisdiction over this Plan."  Docket No. 26-2 at 76; Docket No. 40 at 2.  The entire clause reads, "[e]xcept as the laws of the United States may otherwise require, any and all disputes relating to or arising under this Plan to enforce or interpret this Plan shall be brought by civil action and resolved only in United States District Court for the Western District of Louisiana (the "Court"), which shall have and retain continuing and exclusive jurisdiction over this Plan."  Docket No. 26-2 at 76.  For the reasons discussed above, the Court finds that plaintiffs' claims are not among the civil actions "to enforce or interpret this Plan" over which the Western District of Louisiana has exclusive jurisdiction.  Moreover, as discussed above, the fact that the Western District of Louisiana has "continuing and exclusive jurisdiction over this Plan," is not dispositive because plaintiffs are no longer Plan participants and do not seek relief from the Plan.

13

As such, the Plan's forum selection clause is not applicable to this case. *K & V Scientific Co.*, 314 F.3d at 498 (a forum-selection clause is mandatory if it "contain[s] clear language showing that jurisdiction is appropriate only in the designated forum"). Defendants have therefore failed to demonstrate that the Western District of Louisiana, Monroe Division, is a "district or division to which all parties have consented."[6] 28 U.S.C. § 1404(a). Because defendants advance no other arguments as to why this case should be transferred to the Western District of Louisiana, *see* Docket No. 26, defendants have not shown that the case should be transferred pursuant to 28 U.S.C. § 1404(a). Accordingly, the Court will deny the motion to transfer.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Louisiana, Monroe Division [Docket No. 26] is **DENIED**. It is further

---

[6] Plaintiffs argue in the alternative that the forum selection clause does not bind them. Docket No. 38 at 13. They claim that defendants rely on a 2017 version of the Plan and that plaintiffs never agreed to the forum selection clause in 2017 because they retired in 2014 and 2015. *Id.* at 13–15. The Court finds that it is unnecessary to resolve the issue because, even if the forum selection clause binds plaintiffs, their claims are beyond its scope.

14

**ORDERED** that the Motion for Leave to File Surreply in Opposition to Motion to Transfer [Docket No. 41] is **DENIED**.[7]

DATED September 3, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[7] On December 2, 2024, plaintiffs moved for leave to file a surreply.  Docket No. 41.  Plaintiffs claim that "the Lumen Defendants' reply in support of their motion to transfer venue raises several new arguments regarding the scope of the forum-selection clause and new arguments as to how Plaintiffs, who retired in 2014 and 2015, are supposedly bound by a forum-selection clause that was not included in the Lumen Combined Pension Plan ("Plan") until 2017."  *Id.* at 1–2.  Plaintiffs' motion is without merit.  Defendants reply appropriately responds to the arguments plaintiffs advance in their response; it does not raise new issues warranting a surreply.  *See* Docket No. 40.  Therefore, the Court will deny the motion.  Regardless, for the reasons discussed above, the Court finds that defendants' arguments are not persuasive, and no surreply is necessary.

15