UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:24-cv-02434-PAB-TPO

DOLLY DOW, and VIRGINIA SAKAL, individually and on behalf
of all others similarly situated,

           Plaintiffs,

v.

LUMEN TECHNOLOGIES, INC.,
LUMEN EMPLOYEE BENEFITS COMMITTEE,
CENTURYLINK INVESTMENT MANAGEMENT COMPANY,
KATHLEEN M. LUTITO,
STATE STREET GLOBAL ADVISORS TRUST, CO., and
JOHN DOES 1–5,

           Defendants.

---

## LUMEN DEFENDANTS' MOTION TO DISMISS

---

Defendants Lumen Technologies, Inc. (Lumen), Lumen Employee Benefits Committee, CenturyLink Investment Management Company, and Kathleen M. Lutito (collectively, the Lumen Defendants), move to dismiss Plaintiffs' Complaint (Compl., Dkt. 1), for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

### INTRODUCTION

This class action is part of the latest trend in ERISA litigation—challenging a pension risk transfer transaction that ERISA expressly permits. Plaintiffs contest the transfer of their pension obligations from a plan sponsor to an insurance company selected by an independent fiduciary. But like similar cases, this one suffers from a critical flaw: Plaintiffs do not claim they have missed a single monthly payment since the transfer was completed years ago. As other courts have

recognized, without any loss, Plaintiffs have no injury, Article III standing, or viable cause of action.

Plaintiffs were participants in a defined-benefit pension plan sponsored by Lumen. In 2021, Lumen transferred plan assets and obligations to an insurer (non-party Athene Annuity and Life Insurance Company, or Athene) through a group annuity contract. As a result of the transaction, Athene became responsible for paying Plaintiffs' pension benefits. Plaintiffs do not allege that Athene has failed to timely pay any benefits in the four years since the transaction, or that they have been denied their full benefits. And they acknowledge Athene is a market leader in these transactions and has an investment grade, A+ credit rating. Nonetheless, they allege that the Lumen Defendants violated ERISA's fiduciary obligations and prohibited-transactions provisions.

Plaintiffs' claims have multiple, insurmountable problems. To start, Plaintiffs lack Article III standing. They concede they have received all benefits owed to date and remain contractually entitled to all future benefits. So under *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020), Plaintiffs have not alleged an actual injury. They also have not alleged an imminent injury because they do not plausibly allege a substantial or impending risk of not receiving their benefits. At most, Plaintiffs speculate that Athene could be riskier than other insurers, but they have no basis for alleging a substantial risk that Athene will in fact fail—much less that they actually will lose any pension benefits as a result—when Athene is a regulated insurance company with an unblemished track record, and numerous protections apply to their benefits. Plaintiffs' allegations are as speculative today, after another year of payments, as they were when the complaint was filed in 2024.

On the merits, Plaintiffs fail to state any claims against the Lumen Defendants. The Lumen Defendants did not select Athene—they engaged an independent fiduciary, Defendant State Street Global Advisors Trust Co. (SSGA), to select the annuity provider. Plaintiffs identify no imprudence in choosing SSGA (a market-leading independent fiduciary service), so they resort to conflating

SSGA with other entities named "State Street" to imply a conflict of interest that does not exist. Plaintiffs also fail to allege that the Lumen Defendants knowingly participated in any breach of fiduciary duty by SSGA or failed to adequately monitor SSGA, as they plead no facts about the Lumen Defendants' knowledge of or participation in SSGA's process. Finally, Plaintiffs fail to allege that any Defendants engaged in any prohibited transactions under ERISA, as neither SSGA nor Athene were parties in interest under ERISA.

At bottom, Plaintiffs just disagree with the selection of Athene. That bare disagreement is not a basis for a lawsuit in federal court or for a claim under ERISA. The Court should dismiss.

## CERTIFICATE OF CONFERRAL

Undersigned counsel certifies that on October 11, 2025, counsel for the Lumen Defendants sent counsel for Plaintiffs an email describing all grounds raised in this motion and requested a conferral by telephone. Counsel for Plaintiffs declined to confer, instead stating that they "reserve[d] their rights to amend under FRCP 15(a)(1) after reviewing defendants' full arguments."

## BACKGROUND

### A.    ERISA Permits Plan Sponsors to Transfer Pension Liabilities to an Insurer

ERISA "'represents a careful balance[e]'" between protecting beneficiaries of voluntary benefits plans and ensuring that the burdens on employers are not so onerous that the employers do not offer those plans in the first place. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424-25 (2014). As part of that balance, ERISA imposes duties of loyalty and prudence on plan fiduciaries when they exercise discretionary authority in managing a plan or its assets. *See* 29 U.S.C. §§ 1002(21)(A), 1104(a)(1). The duty of prudence is relative, obligating fiduciaries to act as would reasonable individuals "in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). ERISA also prohibits fiduciaries from causing a plan to engage in certain transactions with a "party in interest," *id.* § 1106(a)-(b), which includes any "person providing

services to the plan," *id.* § 1002(14). But decisions to establish, design, or terminate a plan—called "settlor" actions—are *not* fiduciary functions, and so ERISA's fiduciary obligations do not apply to them. *E.g.*, *Beck v. PACE Int'l Union*, 551 U.S. 96, 101-02 (2007).

This case involves one such settlor action—Lumen's decision to engage in a lift-out pension risk transfer (PRT). In a lift-out PRT, a plan transfers specified pension obligations, and the assets funding those obligations, to an annuity provider (an insurance company) which assumes responsibility for future benefit payments, and then the plan terminates as to those obligations. Compl. ¶ 29. ERISA expressly allows PRTs—in the words of the statute, the "purchase [of] irrevocable commitments from an insurer to provide all benefit liabilities under the plan." 29 U.S.C. § 1341(b)(3)(A)(i). Indeed, a PRT is one of the few ways for a company to exit an ERISA plan. It is also well-established that the decision to engage in a PRT is a settlor action that is "not subject to fiduciary duty requirements" and does not require consent from any beneficiary. *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 538 (5th Cir. 2016).

By definition, a lift-out PRT does not change a participant's benefits. It changes only who is responsible for paying those benefits—instead of the plan, the responsibility passes to a highly regulated insurer in the business of managing and paying annuity benefits. PRTs also change the entity that serves as the final backstop protecting the benefits. The backstop for ERISA is the federally-chartered Pension Benefit Guaranty Corporation (PBGC), whose operations are primarily financed by insurance premiums and which by law is not backed by the full faith and credit of the federal government. *See* PBGC, *Testimony of Vincent K. Snowbarger* (June 22, 2011), perma.cc/9L7T-HDCJ. The backstop for annuities, in contrast, is the beneficiary's home state guaranty association (SGA), which employs multilayered, structural protections to ensure certain benefits in the event of a default. Nat'l Org. of Life & Health Ins. Guar. Ass'ns, *How You're Protected*, perma.cc/

Z9ZK-YJ5E (last visited Oct. 3, 2025). The SGAs in Colorado and New Mexico (where Plaintiffs

reside), like those in most States, guarantee $250,000 of a participant's future benefits. *See* N.M.

Stat Ann. § 59A-30A-4(C); Colo. Rev. Stat. § 10-20-104 (3)(b)(C); Compl. ¶ 31.

Plan sponsors have engaged in PRTs for decades. *See* Compl. ¶ 33. Between 2012 and 2022,

there were nearly 4,500 PRTs involving over $272 billion in premiums. Aon, *U.S. Pension Risk*

*Transfer Market Insights* (2023), perma.cc/3XE7-PKMW . The Department of Labor has also ap-

proved of PRTs: in 1995, it issued Interpretive Bulletin 95-1, which sets out six factors to guide

fiduciaries in the process of selecting an annuity provider. *See* 29 C.F.R. § 2509.95-1. (The bulletin

itself, however, is not part of ERISA, and so fiduciaries are not obligated to follow its guidance.

*See, e.g.*, *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 298 (5th Cir. 2000)). Notably, Plaintiffs do

not allege that *any* retiree has lost a penny of benefits as a result of any PRT since 1995.

### B.    Lumen Elects to Undertake a Pension Risk Transfer Transaction

This case involves the Lumen Combined Pension Plan (the Plan), a defined-benefit pension

plan sponsored by Lumen. Compl. ¶¶ 4, 9. Plaintiffs allege that the Lumen Defendants served as

fiduciaries to the Plan. *Id.* ¶¶ 14-17. Plaintiffs allege that sometime before October 2021, the Lumen

Defendants decided to engage in a lift-out PRT for 22,600 participants in the Plan, including Plain-

tiffs. *Id.* ¶ 90. The Lumen Defendants engaged SSGA as an independent fiduciary to select the

insurer for the PRT. *Id.* ¶ 91.

SSGA selected Athene, which Plaintiffs recognize is a leading player in the PRT market.

Compl. ¶ 92. Athene was acquired in 2022 by Apollo Global Management, one of the largest and

most successful private-equity firms. *Id.* ¶ 47. Athene is a registered insurance company that spe-

cializes in providing group annuity contracts, and has an A+ credit rating. *Id.* ¶¶ 47, 75.

Importantly, the assets supporting Athene's group annuity contracts are placed in a separate

account, which is protected from Athene's general creditors. Compl. ¶ 65. Athene may withdraw

funds from the separate account only when the account's value exceeds Athene's liabilities under its group annuity contracts. *Id.* Plaintiffs do not allege that Athene's annuity obligations are under-funded; to the contrary, they admit that Athene reports a surplus. *Id.* ¶ 50. Further, Athene has reinsurance protection, including from affiliated reinsurers based in Bermuda, a leading reinsurance hub. *Id.* ¶ 48; *see* Ins. Info. Inst., *Bermuda*, perma.cc/LJL4-BZGS (last visited Oct. 3, 2025).

In October 2021, the Plan purchased a group annuity contract with Athene, transferring the responsibility for paying the pensions of 22,600 Plan participants and terminating the Plan as to those participants. Compl. ¶ 92. The monthly pension for each transferred participant is $1,070 or less. *Id.* ¶ 94.

Athene took over responsibility for paying Plaintiffs' and the other transferred participants' benefits starting on December 31, 2021. Compl. ¶ 94. In four years since that transaction, Plaintiffs do not allege that they, or anyone else, have ever received less than their full benefits from Athene. Notably, Plaintiffs have not brought any claims against Athene.

### C.    Plaintiffs Join a Wave of Lawsuits Challenging This Type of Transaction

Plaintiffs are two of the former participants in the Plan who were subject to the PRT at issue. Compl. ¶¶ 12-13. With respect to the Lumen Defendants, Plaintiffs assert five claims:

(1)    breach of fiduciary duties by engaging in the PRT with Athene, Compl. ¶¶ 117-23;

(2)    knowing participation in SSGA's alleged breach of fiduciary duty in selecting Athene, *id.* ¶¶ 125-26;

(3)    violation of ERISA's prohibited-transaction provisions by causing the Plan to engage SSGA as the independent fiduciary to select an insurer, *id.* ¶¶ 128-37;

(4)    violation of ERISA's prohibited-transaction provisions by causing the Plan to engage in the PRT with Athene, *id.* ¶¶ 139-42; and

(5)    failure to monitor other fiduciaries in the selection of Athene, *id.* ¶¶ 144-46.

Plaintiffs do not seek money damages (as they have not suffered any injury). Instead,

Plaintiffs ask the Court to order disgorgement of supposed sums derived from the PRT and to order the Lumen Defendants to post additional security for the payment of their benefits. Compl. 53-54.

This case is part of a wave of lawsuits across the country that challenge PRTs involving Athene, many with largely similar allegations. In eight of the nine other currently pending cases, the defendants have filed motions to dismiss. Six of the courts have ruled on those motions:

- Two cases have been dismissed for lack of standing, and a dismissal has been recommended in a third. *See Camire v. Alcoa USA Corp.*, 2025 WL 947526 (D.D.C. Mar. 28, 2025); Order, *Bueno v. Gen. Elec. Co.*, 2025 WL 2719995 (N.D.N.Y. Sept. 24, 2025); R&R, *Schoen v. ATI, Inc.*, No. 24-cv-01109 (W.D. Pa. Oct. 7, 2025) (ECF No. 100).

- A fourth case was dismissed for failure to state a claim. *Piercy v. AT&T Inc.*, 2025 WL 2505660 (Aug. 29, 2025), *R&R adopted* (D. Mass. Sept. 30, 2025).

- Two courts have found standing and denied motions to dismiss under Rule 12(b)(6). *Konya v. Lockheed Martin Corp.*, 2025 WL 962066 (D. Md. Mar. 28, 2025); *Doherty v. Bristol-Myers Squibb Co.*, 2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025).

## ARGUMENT

### I.    Plaintiffs Lack Article III Standing

Every plaintiff in federal court must establish Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, the plaintiff must allege facts demonstrating (1) "an injury in fact" that (2) was "likely caused by" the defendant and (3) "would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). An alleged statutory violation, without more, is insufficient to demonstrate standing. *Id.* at 426; *see Spokeo Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). Rather, an "injury in fact" requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and '*actual or imminent*, not conjectural or hypothetical,'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560) (emphasis added). ERISA plaintiffs are held to the same standard: "There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Accordingly, district courts "must" dismiss ERISA suits that allege

statutory violations "but fail to identify an injury." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 708 (2025). Here, Plaintiffs fail to plausibly allege an injury in fact, so they lack Article III standing.

### A.    Plaintiffs Do Not Plausibly Allege An Actual Injury

Plaintiffs do not allege an actual injury, nor could they. In *Thole*, the Court explained that participants in a defined-benefit plan have an actual injury only if they have not received all benefits due or are no longer entitled to receive those benefits. 590 U.S. at 542-43. Merely alleging a breach of fiduciary duty is insufficient. *Id*. The Court acknowledged that under trust law, a breach of fiduciary duty could be an injury—but the Court rejected this analogy for participants in defined-benefit plans, because they have no independent interest in the trust assets. *Id*.

Plaintiffs' complaint does not allege that they have not been paid benefits they were due, or that their entitlement to benefits has been reduced. On the contrary, Plaintiffs recognize that Athene has timely paid their benefits since December 31, 2021, and that they remain entitled to those benefits in the future. Compl. ¶ 94. As in *Thole*, "the outcome of this suit would not affect [Plaintiffs'] future benefit payments"—win or lose, Plaintiffs "would still receive the exact same monthly benefits that they are already slated to receive, not a penny less"—so they "have no concrete stake in this lawsuit." 590 U.S. at 541-42. Accordingly, district courts addressing similar challenges to PRTs involving Athene have held that there is no actual injury. *See Camire*, 2025 WL 947526, at *7.

Plaintiffs offer three arguments for why they have suffered an actual injury. *See* Compl. ¶ 7. Each lacks merit. First, Plaintiffs argue the hypothetical "present value" of their pension benefits is somehow less than it would have been if an allegedly less risky insurer had been selected. *Id*. ¶ 108; *see Piercy*, 2025 WL 2505660, at *12-14. But a supposed decrease in the present value of future benefits is not a present injury; it merely restates Plaintiffs' theory that there is some risk that their future benefits will not fully be paid. *Bueno*, 2025 WL 2719995, at *11 & n.2. That is, Plaintiffs do not allege a decrease in the nominal amount of their future benefits—they allege only that there is

some unknown (and unknowable) risk that they will not receive those amounts. But, of course, *any* risk of future nonpayment can be recast as a decrease in the present value of the payment, because the "present value" of a stream of payments reflects the "risk of nonpayment." *Till v. SCS Credit Corp.*, 541 U.S. 465, 483 (2004). Plaintiffs' theory thus impermissibly collapses the distinction between present and future injury.

Plaintiffs' present-value theory is particularly unpersuasive here, both because they never held any property interest in the Plan, and because they cannot sell their pension benefits. Plaintiffs "present value" theory seeks to treat Plaintiffs as "investors," Compl. ¶ 7, and their pension benefits as individualized property (like a "bond"), the value of which can be reduced due to risk of future nonpayment, *id.* ¶ 108. But "plan participants possess no equitable or property interest in the plan," and they suffer no injury even if the value of the assets in the Plan decreases. *Thole*, 590 U.S. at 543. Further, ERISA expressly provides that benefits cannot be "assigned or alienated," 29 U.S.C. § 1056(d)(1), and that prohibition "continue[s] to govern" when a plan is terminated, *Smith v. Mirman*, 749 F.2d 181, 181 (4th Cir. 1984). Plaintiffs thus have no ability to actualize any "present value" of their benefits—and indeed, they do not allege they have attempted to do so. Because they cannot sell their benefits, they would suffer harm only if a benefit payment was not made. But, as explained below, they have not alleged a substantial risk of that occurring.

Second, Plaintiffs suggest that they have suffered an actual injury because, as a result of the PRT, their benefits no longer are protected by ERISA but instead are protected only by state insurance law, which they claim is somehow less protective than ERISA. Compl. ¶ 111; *see Doherty*, 2025 WL 2774406, at *7-10. But it too makes no sense. It incorrectly presumes that, before the PRT, Plaintiffs' benefits were somehow absolutely protected by ERISA. Compl. ¶ 111. But in fact, ERISA's protections are far from absolute, including because ERISA expressly permits the

employer to end those protections by engaging in a lift-out PRT. 29 U.S.C. § 1341(b)(3)(A)(i). So before the PRT, whatever protections Plaintiffs had were always subject to Lumen's right to terminate those protections through a PRT. Plaintiffs cannot cherry-pick the parts of ERISA that they like (ERISA's protections) while ignoring the parts they dislike (the sponsor's right to end those protections).

Plaintiffs' protection-reduction theory also fails because they do not plausibly allege their benefits were more secure before the PRT than after it. Plaintiffs concede that Athene maintains a surplus, Compl. ¶ 51, but they do not allege that the Plan was fully funded before the PRT. Plaintiffs acknowledge that Athene has an A+ rating, *id.* ¶ 75, but fail to allege that Lumen had the same or better rating.[1] And Plaintiffs point to DOL's oversight of ERISA plans, *e.g.*, *id.* ¶ 39, but they fail to allege that state oversight of insurers is less protective. In short, Plaintiffs provide no reason to believe that their pensions would have been more secure had they remained in the Plan.

Third, Plaintiffs assert without elaboration that they have standing to seek disgorgement. Compl. ¶ 7. Yet Plaintiffs allege no facts to suggest that any Defendant obtained any gains that might be disgorged, and the Plan itself is not a party (and this Court has determined the Plan is not an indispensable party, *see* Dkt. No. 45, at 12). Nor would those allegations be sufficient for standing purposes. To the extent Plaintiffs argue that a breach of an ERISA fiduciary obligation, standing alone, suffices to confer standing to seek disgorgement, the Court in *Thole* squarely foreclosed that argument for claims involving a defined-benefit plan. 590 U.S. at 542-43.

---

[1] Lumen's SEC filings reflect that its credit ratings both now and at the time of the PRT are below the A+ level. *See Lumen Techs. Inc. Form 10-K*, at 54 (Feb. 25, 2021), perma.cc/DY2G-NA5G (BBB- to BB+ ratings); *Lumen Techs Inc. Form 10-K*, at 58 (Feb. 25, 2025), perma.cc/CSE9-LFUY (CCC- to B+ ratings). The Court may take judicial notice of these filings on a motion to dismiss. *See SEC v. Willis*, 2023 WL 11956416, at *8 n.6 (D. Colo. Sept. 29, 2023).

**B.      Plaintiffs Do Not Plausibly Allege An Imminent Injury**

In addition to not alleging an actual injury, Plaintiffs also do not allege any imminent injury.

The Supreme Court has explained that for a threat of future harm to be sufficient to confer standing,

the future harm must be "imminent"—meaning that the harm is "*certainly* impending" or has a

"substantial risk" of occurring. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013).

In *Clapper*, the Court explained that this standard is not met by a "theory of standing[] which relies

on a highly attenuated chain of possibilities." *Id.* at 410. If multiple events must occur before the

plaintiff is actually injured, the plaintiff lacks an injury if there is no reason to believe that all events

will occur—particularly if some events depend on "independent actors." *Id.* at 410-14; *see, e.g.*,

*COPE v. Kan. St. Bd. of Educ.*, 821 F.3d 1215, 1222-23 (10th Cir. 2016).

Plaintiffs do not plausibly allege that there is a substantial or impending risk that they will

not be paid their full benefits. As Plaintiffs admit, Athene has an A+ credit rating, and they do not

allege that Athene has ever, in its 16-year history, failed to pay any pensioner less than the full

benefits. Compl. ¶¶ 18, 75. In fact, Plaintiffs acknowledge that companies with A ratings (which is

lower than Athene's) have only a 5% risk of defaulting over 20 years. *See id.* ¶ 76. As the district

court in *Bueno* explained, it is difficult to "reconcil[e] a major credit rating agency's finding that

Athene has a five-percent risk of default over a twenty-year period with a finding that it poses a

substantial risk of default in a manner that would imminently prevent Plaintiffs from receiving their

annuity payments." 2025 WL 2719995, at *18. Further, Plaintiffs do not allege that their benefits

are underfunded; to the contrary, they acknowledge that Athene reports a surplus. Compl. ¶ 65. So

Plaintiffs here have cobbled together even less than the plaintiffs in *Thole*, who *had* alleged under-

funding—and even that was not enough for standing. 590 U.S. at 546. Indeed, the fact that there

has been no change to Plaintiffs' benefits in the *four years* since the PRT (both before and after

Apollo's acquisition of Athene), including the year-plus in which this case has been pending,

confirms that there is no "substantial" or "impending" risk.

Instead, Plaintiffs' allegations all focus on how, in their view, Athene is riskier than other insurers because of its private-equity ownership, investment strategies, and use of Bermuda-based reinsurers. *See* Compl. ¶¶ 47-78. As the *Camire* and *Bueno* courts explained, even if those factors make Athene riskier than some peers, that comparative risk does not establish a substantial risk that Athene will fail to pay any benefits. 2025 WL 947526, at *7; 2025 WL 2719995, at *15-18.

The Supreme Court has made clear that whether a future risk is sufficient for standing depends on the absolute, not relative, risk. For example, in *TransUnion*, which involved plaintiffs who had been incorrectly designated as potential terrorists, the Court held that the plaintiffs whose designations had not yet been disseminated to others did not have standing. 594 U.S. at 437. Despite the possibility that the designation could be disseminated to a third party and cause reputational harm (as had happened to other plaintiffs), the Court concluded that this potential risk was not sufficient to confer standing, because there was no "sufficient likelihood" that the risk would in fact materialize. *Id.* at 437-38 is the situation here: Plaintiffs have not alleged facts to show a substantial risk that Athene will, in fact, be unable to pay their benefits—they merely allege that Athene engages in practices or investment strategies that (they claim) may not be the same or as conservative as other insurers. *See Bueno*, 2025 WL 2719995, at *15-18.[2]

Notably, Plaintiffs' theory of harm depends on a highly attenuated chain of events. At least

---

[2]    To the extent that Plaintiffs rely on the statement in *Thole* about a theory of standing based on a "substantially increased risk" to argue that an increase in risk is sufficient to establish standing, that reliance is misplaced. *See Bueno*, 2025 WL 2719995, at *15. The Supreme Court in *Thole* was merely restating an *amicus*'s argument; the Court did not affirmatively hold that an increase in risk would be sufficient. *See* 590 U.S. at 546. Notably, the Court cited decisions that concluded that an allegation of an increase in risk is not sufficient to confer standing. *See Clapper*, 568 U.S. at 414; *Lee*, 837 F.3d at 546; *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013). And the Court's later decision in *TransUnion* confirmed that a mere increase in risk is insufficient.

five things must occur during Plaintiffs' lifetimes before they would ever actually receive less than their full benefits: (1) the assets the Plan transferred to Athene would have to be insufficient to pay their benefits; (2) all of Athene's other assets would have to be insufficient; (3) Athene's reinsurance coverage would have to be insufficient; (4) Athene would have to fail to raise funds on the markets; and (5) SGA coverage would have to be unable to make up the shortfall. As the district court in *Camire* explained, Plaintiffs do not plausibly allege that there is a substantial risk that *any* of the events in the chain will occur, much less all—and all would need to happen before Plaintiffs would lose a penny in benefits. 2025 WL 947526, at *7. Indeed, the facts alleged suggest that Plaintiffs would *never* see any reduction in benefits. Plaintiffs receive a maximum monthly benefit of $1,070. Compl. ¶ 94. Assuming a catastrophic scenario in which Athene is only able to fund 50% of Plaintiffs' benefits, SGA coverage of $250,000 would be sufficient to make up the shortfall for over 40 years. That is longer than the "30-year time horizon" that Plaintiffs hypothesize. *Id.* ¶ 76.

This Court should not follow the two district courts that found similar allegations sufficient to establish a substantial risk of future harm. The *Konya* court held that the allegations there (which are virtually identical to those here) "barely" established standing, 2025 WL 962066, at *9, *13, and then certified the decision for interlocutory appeal, 2025 WL 2050997, at *4, *6 (D. Md. July 22, 2025). That decision currently is pending in the Fourth Circuit, so its precedential value is limited. And the *Doherty* court relied principally on allegations not present here. *E.g.*, 2025 WL 2774406, at *6 (citing comparisons between Athene and recently failed insurers not alleged here). Anyway, the fundamental legal error with both decisions is that they were based on the relative risk of Athene, not the absolute risk. The *Doherty* plaintiffs alleged that Athene has a similar surplus-to-risk ratio to cherry-picked examples of failed insurers, *see* 2025 WL 2774406, at *6, but that says nothing about whether the average insurer with that ratio is at imminent risk of failure.

In sum, Plaintiffs fail to allege an imminent risk of injury sufficient to establish standing. The Court should dismiss the complaint for lack of subject-matter jurisdiction.

## II.    Plaintiffs Fail to Plausibly Plead Any Claims Against the Lumen Defendants

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The court accepts the well pleaded factual allegations as true and views them in the light most favorable to the plaintiff, but the court does not need to accept as true conclusory allegations made without "stating underlying facts" or "factual enhancement," or factual allegations contradicted by a document that the court can consider. *Matney v. Barrick Gold N. Am.*, 80 F.4th 1136, 1144-45 (10th Cir. 2022) (internal quotation marks omitted). Plaintiffs' claims against the Lumen Defendants do not meet this standard.

### A.    Plaintiffs Do Not Plausibly Plead Any Breach of Fiduciary Duty (Count I)

Count I alleges that "Defendants" breached ERISA's duties of prudence and loyalty by selecting Athene, because Athene allegedly was not the safest insurer available and because the decision to select Athene allegedly was motivated by a desire to save money. Compl. ¶ 120. The complaint also alleges that the Lumen Defendants acted imprudently by selecting SSGA as its independent fiduciary. *Id.* ¶ 106.

The claim based on the selection of Athene fails because Plaintiffs do not allege that the Lumen Defendants acted as fiduciaries with respect to that selection. As Plaintiffs recognize, the Lumen Defendants did not select Athene—instead, the Lumen Defendants engaged SSGA as the independent fiduciary to select the annuity provider, and SSGA selected Athene. Compl. ¶¶ 91, 100. Under ERISA, whether a person is a fiduciary depends on the conduct at issue—a person is subject to fiduciary obligations only when performing fiduciary functions, and not when performing non-fiduciary functions such as settlor actions. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000).

The decision to engage in a PRT is a settlor action and not a fiduciary function, so fiduciary duties do not apply to that decision. *Lee*, 837 F.3d at 538. And while the selection of the insurer may be a fiduciary function, the Lumen Defendants did not make that selection. Thus, the Lumen Defendants cannot be liable for breach of fiduciary duty due to SSGA's selection of Athene.

The claim based on the selection of SSGA also fails, because Plaintiffs fail to allege that the Lumen Defendants acted imprudently or disloyally in selecting SSGA. Prudence claims are *process* claims—ERISA requires a fiduciary to follow a prudent process, but does not mandate any particular result. *PBGC ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2d Cir. 2013); *see* 29 U.S.C. § 1104(a)(1)(A). Yet Plaintiffs say nothing about any process that the Lumen Defendants followed here. They instead merely assert that, because the process resulted in the selection of SSGA as the independent fiduciary, it must have been imprudent. Compl. ¶ 107. But while an unreasonable result can suggest an imprudent process, *see Matney*, 80 F.4th at 1158, Plaintiffs fail to plausibly allege that selecting SSGA was unreasonable.

To start, Plaintiffs recognize, as they must, that SSGA is a leading independent fiduciary. *See* Compl. ¶ 91. Plaintiffs nonetheless maintain that the selection of SSGA was imprudent or disloyal because "State Street," as they define it, beneficially owned more than 5% of the publicly traded stock in Lumen and in Apollo and Athene, and thus was not independent from either. *Id.* ¶¶ 83-87, 106. But as the *Piercy* court explained, Plaintiffs' allegations are "wholly meretricious," because they conflate the defendant here—SSGA, which serves as an independent fiduciary to ERISA plans—and its many affiliates, which include a "large investment manager and/or custodian of corporate shares." 2025 WL 2505660, at *24-25.

Further, although Plaintiffs allege that SSGA's affiliate owns a large number of shares of both Lumen and Apollo/Athene, they provide no context to evaluate the significance of those

allegations. In particular, the complaint is silent as to whether those shares are a "significant por-

tion" of the affiliate's "overall portfolio"; whether the affiliate owns "even larger stakes in those

companies' competitors"; whether the affiliate "holds such shares for its own benefit" as opposed

to in trust for its customers; or whether those shares are acquired through an "active portfolio man-

agement strategy" as opposed to as part of indexed products. *Piercy*, 2025 WL 2505660, at \*24-25.

And even if these flaws in Plaintiffs' allegations were overlooked, it is implausible to infer from

those allegations that "State Street" would willingly engage in conduct that would create liability

under ERISA for the companies in which it is invested. There thus is no plausible basis for the

Court to infer that the Lumen Defendants' selection of SSGA was imprudent or disloyal.

### B.      Plaintiffs Do Not Plausibly Plead Derivative Breach Claims (Counts I, II, & V)

Count I generically and in conclusory fashion asserts that "[e]ach Defendant knowingly

participated in the breach of the other Defendants." Compl. ¶ 123. Count II alleges slightly more

specifically that the Lumen Defendants knowingly participated in SSGA's alleged breaches of fi-

duciary duty in selecting Athene. *Id.* ¶ 126. Count V alleges that the Lumen Defendants failed to

monitor the fiduciary that selected Athene (*i.e.*, SSGA) to prevent it from imprudently or disloyally

making that selection. *Id.* ¶ 145. These derivative claims all fail.

First, Plaintiffs fail to plead an underlying fiduciary breach, as would be required for both

knowing-participation and failure-to-monitor claims. *See* 29 U.S.C. § 1105(a); *Matney*, 80 F.4th at

1159 n.21. As SSGA explains in its motion to dismiss, Plaintiffs do not plausibly plead that SSGA

breached any fiduciary duties—the selection of Athene was prudent and was not disloyal. *See*

SSGA Mot. to Dismiss 6-20; *Piercy*, 2025 WL 2505660, at \*29-43.

Second, the knowing-participation claims fail because Plaintiffs do not plead that the Lumen

Defendants actually knew of SSGA's supposed breach and "knowingly participate[d]," concealed,

or enabled that breach. 29 U.S.C. § 1105(a). They allege only that the Lumen Defendants

"appointed [SSGA] as the independent fiduciary charged with choosing an annuity provider" and "act[ed] on [SSGA]'s advice." Compl. ¶¶ 91-92. Neither was an action in *furtherance* of any breach.

Third, the failure-to-monitor claim fails because Plaintiffs do not plead that the Lumen Defendants had "'notice of possible misadventure[s] by'" SSGA. *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 n.10 (4th Cir. 1996) (quoting *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1132 (N.D. Ind. 1991)). ERISA's duty to monitor requires the fiduciary to act only if it has notice of potential problems; it "does not carry with it the duty to review an [appointed] fiduciary's every decision." *Scalia v. WPN Corp.*, 417 F. Supp. 3d 658, 671 (W.D. Pa. 2019). Indeed, such a burdensome standard "would defeat the purpose of having trustees appointed to run a benefits plan in the first place." *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011). The complaint here contains no allegation that the Lumen Defendants knew of any "possible misadventures" by SSGA; to the contrary, the complaint elsewhere faults the Lumen Defendants for *not* knowing of SSGA's supposed conflicts. *See* Compl. ¶ 107. Plaintiffs appear to assume that if SSGA violated ERISA by selecting Athene, then the Lumen Defendants should automatically be liable as well. That is not how a failure-to-monitor claim works. *Howell*, 633 F.3d at 573.

## C.    Plaintiffs Do Not Plausibly Plead Prohibited Transactions (Counts III & IV)

Count III alleges that the Lumen Defendants violated ERISA's prohibited-transaction provisions, 29 U.S.C. § 1106(a) and (b), by causing the Plan to engage SSGA as the plan's independent fiduciary. Compl. ¶ 131. Count IV alleges that Defendants violated 29 U.S.C. § 1106(a) by causing the Plan to enter into the PRT with Athene. *Id.* ¶ 139. Neither claim has merit.

To start, neither Count III nor Count IV states a prohibited-transaction claim under 29 U.S.C. § 1106(a) because Plaintiffs do not plead a relevant "party in interest." As relevant here, ERISA defines a "party in interest" to include any "person providing services to the plan." *Id.* § 1002(14); *see* Compl. ¶¶ 131, 139 (alleging that SSGA and Athene were parties in interest because

they "provided services to the Plan"). The Tenth Circuit has interpreted this provision to require that "some prior relationship must exist between the fiduciary and the service provider"—in other words, "the initial agreement with a service provider" does not make the service provider a party in interest. *Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021).

Here, Plaintiffs do not allege that the Lumen Defendants or the Plan already were receiving services from SSGA before the Lumen Defendants engaged SSGA, or that the Lumen Defendants, SSGA, or the Plan already were receiving services from Athene before the Lumen Defendants entered into the PRT with Athene. Plaintiffs thus give the Court no basis to infer that either SSGA or Athene were parties in interest within the meaning of ERISA. *See Piercy*, 2025 WL 2505660, at *45. Further, Plaintiffs allege no facts showing that Athene provided any services to the Plan, as required for Athene to be a party in interest. Plaintiffs allege only that Athene sold a group annuity contract to the Lumen Defendants—a contract which never became part of the Plan but instead replaced the Plan's obligations as to some participants. *See id.* at *46. "[S]elling an insurance product does not constitute the provision of services within the meaning of ERISA." *Id.* Without any parties in interest, there cannot be any claims under 29 U.S.C. § 1106(a) as to any Defendant.

Count III also fails to state any claim under 29 U.S.C. § 1106(b). That provision prohibits a plan fiduciary from engaging in self-dealing, including (as relevant here) by using plan assets in the fiduciary's "own interest or for [its] own account," 29 U.S.C. § 1106(b)(1), or by acting "in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interest of the plan," *id.* § 1106(b)(2). Plaintiffs do not allege any facts suggesting that by causing the Plan to engage SSGA as an independent fiduciary, the Lumen Defendants were acting in their own interests or for their own accounts, or that they somehow acted on behalf of SSGA. Plaintiffs assert only that SSGA "was not independent," Compl. ¶ 134, supposedly because of its affiliates' ties to Lumen

and to Apollo and Athene, but those allegations are inadequate to show lack of independence, pp. 15-16, *supra*; *see Piercy*, 2025 WL 2505660, at *47.

Count IV additionally fails to state a claim because the Lumen Defendants were not acting as fiduciaries when they engaged in the PRT with Athene, as would be required for a 29 U.S.C. § 1106 claim. Engaging in the PRT was a settlor action, *Beck*, 551 U.S. at 101-02, and the fact that the Lumen Defendants may have "[written] the check to pay for the annuities" did not transform them into fiduciaries for that purpose, *Piercy*, 2025 WL 2505660, at *45.

### D.    Plaintiffs Cannot Seek Disgorgement (Counts I, III, & IV)

Counts I, III, and IV seek disgorgement. Compl. ¶¶ 122, 135, 141. But disgorgement—a form of equitable relief—is available only for claims under 29 U.S.C. § 1132(a)(2) (which incorporates 29 U.S.C. § 1109(a)) and 29 U.S.C. § 1132(a)(3). Plaintiffs lack statutory standing to invoke either provision—§ 1132(a)(2) is limited to claims "by the Secretary, or by a participant, beneficiary, or fiduciary," and § 1132(a)(3) to claims "by a participant, beneficiary, or fiduciary." Plaintiffs are no longer participants or beneficiaries in the Plan, because the PRT terminated "their status as 'participants' in the Plan." Compl. ¶ 3; *see* ECF No. 45, at 10 n.4. They thus cannot invoke 29 U.S.C. § 1132(a)(2) or (a)(3).

Instead, Congress created an express cause of action—29 U.S.C. § 1132(a)(9)—for former participants in an ERISA plan who stopped being participants due to the termination of the plan in a lift-out PRT. That provision allows those former participants to sue for violations of ERISA related to the PRT. *See* 29 U.S.C. § 1132(a)(9). But the relief available under that provision is narrower than that available under 29 U.S.C. § 1132(a)(2) or (a)(3). Unlike those other sections, § 1132(a)(9) does not expressly authorize "appropriate equitable relief," but instead authorizes only "appropriate relief," such as "assur[ing]" that the participants receive their benefits. *Id.* Here, because Plaintiffs do not allege that the group annuity contract is underfunded, disgorgement does not

help assure that Plaintiffs receive their benefits. Plaintiffs thus lack the ability to seek disgorgement.

**E.    Plaintiffs Fail to State A Claim Against Ms. Lutito (All Counts)**

Plaintiffs' claims against Ms. Lutito should be dismissed because they lack any factual basis. The sole allegation about Ms. Lutito is that she was the President and Chief Investment Officer of Defendant CenturyLink Investment Management Company. Compl. ¶¶ 16-17. Plaintiffs nowhere explain what specifically Ms. Lutito did, including what (if any) function she played with respect to the Athene PRT. Nor did they identify any basis for their claims against Ms. Lutito when undersigned counsel requested to confer about this motion. Given that asserting "multi-million dollar claims" under ERISA against individuals "has the tremendous power to harass," *Cunningham v. Cornell Univ.*, 2018 WL 1088019, at *1 (S.D.N.Y. Jan. 19, 2018), and that the complaint is completely devoid of any allegations specific to Ms. Lutito, at a minimum all claims against her should be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' complaint.

October 15, 2025

Nancy G. Ross
Reginald R. Goeke
Minh Nguyen-Dang
**MAYER BROWN LLP**
1999 K Street NW
Washington, DC 20006
(202) 263-3000
nross@mayerbrown.com
rgoeke@mayerbrown.com
mnguyen-dang@mayerbrown.com

Respectfully submitted,

By: /s/ *Kathryn A. Reilly*
Kathryn A. Reilly
Jacob A. Rey
**WHEELER TRIGG O'DONNELL LLP**
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
(303) 244-1800
reilly@wtotrial.com
rey@wtotrial.com

*Counsel for Defendants Lumen Technologies, Inc., Lumen Employee Benefits Committee, CenturyLink Investment Management Company, and Kathleen M. Lutito*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 15, 2025, I electronically filed the foregoing
LUMEN DEFENDANTS' MOTION TO DISMISS with the Clerk of Court using the CM/ECF
system which will send notification of such filing to all counsel of record.

<u>/s/ *Kathryn A. Reilly*</u>