## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Case No. 1:24-cv-02434-PAB-TPO**

DOLLY DOW, and VIRGINIA SAKAL, individually and
as representatives of a class of participants and
beneficiaries of the Lumen Combined Pension Plan f/k/a
CenturyLink Combined Pension Plan,

Plaintiffs,

v.

LUMEN TECHNOLOGIES, INC., LUMEN EMPLOYEE
BENEFITS MANAGEMENT COMPANY, KATHLEEN M.
LUTITO, STATE STREET GLOBAL ADVISORS TRUST CO.,

Defendants.

### STATE STREET GLOBAL ADVISORS TRUST COMPANY'S
### MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant State Street Global Advisors Trust Company ("SSGA Trust Co.")[1] hereby

moves, pursuant to Federal Rules 12(b)(1) and 12(b)(6), to dismiss the Complaint (Dkt. 1).  In

support of this motion, SSGA Trust Co. submits the following points and authorities.

### INTRODUCTION

SSGA Trust Co. is moving for dismissal under 12(b)(1) and 12(b)(6) for the reasons set

forth in Co-Defendant Lumen's[2] brief.  In addition to the deficiencies in the Complaint addressed

by Lumen—which dispose entirely of the litigation—the Complaint also fails to state a claim as

---

[1] SSGA Trust Co. is a wholly-owned subsidiary of State Street Bank and Trust Company (which
in turn is a wholly-owned subsidiary of State Street Corporation), and is one of the legal entities
that comprises State Street Investment Management ("State Street IM") (formerly State Street
Global Advisors), the global investment management business of State Street Corporation.

[2] Throughout this brief, "Lumen" refers collectively to Defendants Lumen Technologies, Inc.
("Lumen Inc."), the Lumen Employee Benefits Committee, the CenturyLink Investment
Management Company, and Kathleen M. Lutito.

1

to SSGA Trust Co.  The Complaint contains no plausible allegation that SSGA Trust Co., a professional independent fiduciary that has selected numerous annuity providers for scores of pension risk transfers ("PRTs"), acted disloyally in selecting Athene—one of the nation's largest PRT providers—for Lumen's partial PRT.  Nor does the Complaint plausibly allege that SSGA Trust Co.'s process for selecting Athene was imprudent; indeed, the Complaint is entirely silent as to that process, and relies almost entirely on facts and data that *postdate* the October 2021 PRT transaction in attempting to suggest a historically deficient process.

## BACKGROUND

### I.    SSGA Trust Co. and Its Role With Respect to The Lumen PRT Transaction.

Non-party State Street Corporation ("State Street Corp.") is a global financial services firm and bank holding company with numerous operating company subsidiaries, including SSGA Trust Co.[3]  As of December 31, 2021, its investment management business, State Street IM, had approximately $4.14 trillion in assets under management ("AUM").[4]  State Street IM holds these assets in trust for the benefit of its clients and/or the investment funds it advises and those funds' beneficial owners.[5]  These funds are primarily invested pursuant to passively-

---

[3] Compl. ¶ 21; State Street Corp. 2021 10-K at 6, https://perma.cc/CP6Y-EZXZ.  SSGA Trust Co. references in this motion publicly-available documents filed with the Securities and Exchange Commission (SEC) and state insurance regulators (nn. 3–6, 9, 16–10, 25–28, 31, 33), documents relied on by Plaintiffs and incorporated into the Complaint (nn. 22–23, 35), and the National Association of Insurance Commissioners' website (n. 30).  The Court may properly consider these documents without converting the motion to one for summary judgement.  *See In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1143 n.3 (D. Colo. 2011) (Brimmer, J) (taking judicial notice of SEC filings); *Abdulmutallab v. Barr*, 2019 WL 4463284, at *2 (D. Colo. Sept. 18, 2019) (Courts may consider documents incorporated into the complaint.); *Buhendwa v. Reg'l Transp. Dist.*, 82 F. Supp. 3d 1259, 1263 n.1 (D. Colo. 2015) (Brimmer, J.) (taking judicial notice of an agency's website).

[4] State Street Corp. 2021 10-K at 7, https://perma.cc/CP6Y-EZXZ.

[5] For example, the SPDR Series Trust is a Massachusetts business trust and an open-end management investment company.  SPDR Series Trust 2021 Annual Report at 50, https://tinyurl.com/z67cdvty.  It consists of 82 State Street IM-advised investment funds that

managed index strategies.  Of the $2.67 trillion of these assets invested in equities, over $2.59

trillion—more than 97%—were invested in passively managed strategies.[6]

SSGA Trust Co.'s Independent Fiduciary Services Team ("IFS")—a unit within State

Street IM—separately offers independent fiduciary services.  Through IFS, SSGA Trust Co. is "a

large, experienced, financial adviser with experience in" PRTs, having served as independent

fiduciary for more than 80 PRTs over 35 years in the business.  *Piercy v. AT&T Inc.*, No, 24-cv-

10608, 2025 WL 2505660, at *23 (D. Mass. Aug. 29, 2025); *see* Compl. ¶ 91 n.3.  PRTs allow

an employer to satisfy its pension obligations through the purchase of a group annuity contract.

Compl. ¶ 27.  Insurance companies are highly regulated by the insurance commissioners of the

states in which they operate; commissioners are charged with ensuring that the insurers are able

to meet their long-term commitments to policyholders.[7]  Regulators that detect weaknesses in an

insurer's financial condition may take remedial measures ranging from restrictions on investment

activity or business expansion to a full regulatory takeover.[8]

Athene Annuity and Life Co. ("Athene") is an Iowa insurance and retirement services

company that, among other things, issues retirement income products, including annuities.[9]

---

track market indices generated by third parties such as S&P and Russell.  *See, e.g.*, *id.* at 2, 11.
The SPDR Series Trust holds securities in trust for the beneficial interest of the 82 investment
funds established under the trust.  *Id.* at 50.

[6] State Street Corp. 2021 10-K at 67, https://perma.cc/CP6Y-EZXZ.

[7] *See* Iowa Code § 507C.1 (Insurance Commissioner charged with the "protection of the interests
of insureds . . . and the public," including through "[e]arly detection of a potentially dangerous
condition in an insurer and prompt application of appropriate corrective measures").  *See also,
e.g.*, N.Y. Ins. Law § 310 (Superintendent may examine financial condition of insurers operating
in New York and "shall be given convenient access at all reasonable hours to the books, records,
files, securities and other documents of such insurer or other person, including those of any
affiliated or subsidiary companies thereof").

[8] *See*, *e.g.*, Iowa Code § 521E (regulatory framework for monitoring and action when an
insurer's financial condition becomes unstable or undercapitalized).

[9] Athene Holding Ltd. 2024 10-K at 6, 10, 12, 24, https://perma.cc/VLS7-GZ5X.

Athene has completed at least 49 PRTs totaling $52.7 billion, covering over 550,000 retirees.[10]
As Plaintiffs acknowledge, Athene has an investment grade, A+ credit rating.  Compl. ¶¶ 74-75.

## II.     Plaintiffs' Allegations.

Plaintiffs Dolly Dow and Virginia Sakal ("Plaintiffs") allege that SSGA Trust Co.
breached fiduciary duties of loyalty and prudence by selecting Athene for the Lumen PRT.
Compl. ¶¶ 116–122.  Plaintiffs assert that SSGA Trust Co. was conflicted in its selection because
State Street IM has relationships with Athene (and current parent, Apollo) and had an incentive
to save Lumen money because State Street IM is a Lumen Inc. shareholder.  *Id.* ¶¶ 83–87.

## ARGUMENT

Count I alleges that SSGA Trust Co. breached ERISA fiduciary duties of loyalty and
prudence under 29 U.S.C. § 1104(a)(1)(A)–(B).  To state a claim for ERISA fiduciary breach,
Plaintiffs must plausibly allege that SSGA Trust Co. (1) was a fiduciary, (2) breached an ERISA-
imposed duty, and (3) caused a loss to the plan.  *See Ramos v. Banner Health*, 461 F. Supp. 3d
1067, 1121 (D. Colo. 2020).  Plaintiffs fail to plausibly allege at least the second element.

## I.     Plaintiffs' Allegations Postdate the Lumen PRT and Thus Impermissibly Operate From the Vantage Point of Hindsight.

It is blackletter law that "the content of the duty of prudence turns on 'the circumstances
... prevailing' at the time the fiduciary acts."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S.
409, 425 (2014) (quoting 29 U.S.C. § 1104(a)(1)(B)).  Thus, "to establish a claim ... a plaintiff
must allege that a fiduciary's investment decisions—in the conditions prevailing at the time, and
without the benefit of hindsight—are such that a reasonably prudent fiduciary would not have
made."  *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1196 (D. Colo. 2021) (dismissing complaint,
quotations omitted) *abrogated on other grounds by Hughes v. N.W. Univ.*, 595 U.S. 170 (2022);

---

[10] *Id.* at 67.

see *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1123 (D. Colo. 2020), *aff'd*, 1 F.4th 769

(10th Cir. 2021) (same); *see also Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145,

157 (S.D.N.Y. 2017) (duty of loyalty is also process-based).  Thus, a breach cannot be

established through "hindsight."  *Kurtz*, 511 F. Supp. 3d at 1196.

Plaintiffs' claim fails because it is a prototypical example of hindsight pleading.  The

alleged breach—the selection of Athene—was finalized in October 2021.  Compl. ¶ 3.  Yet the

Complaint alleges next to nothing about the state of the world as of October 2021.  It purports to

raise various supposedly troubling facts about Athene and its parent—for example, that Athene

allegedly held a high concentration of risky assets *as of 2023*.  *Id.* ¶¶ 49, 98 (emphasis added).

But the vast majority of the alleged "risks"—and the report that supposedly identified Athene as

"riskier" than other insurers—postdate the PRT at issue.  *See also, e.g.*, Compl. ¶ 47 (Apollo's

merger with Athene *in 2022*); ¶ 47 (Athene's investment in asset-backed securities and leveraged

loans and use of Bermuda-based reinsurers *as of "[t]oday"*); ¶¶ 49, 51 (Athene's collateralized

loan obligations and surplus-to-liability ratio *in late 2023*); ¶¶ 53–54 (the concentration of

Athene's "risky assets relative to its surplus" *in 2022*); ¶ 58 (Athene's quantity of reinsurance to

purportedly captive affiliates *as of year-end 2023*); ¶ 59 (Athene's modified co-insurance

arrangements for *2022* and *2023*); ¶ 77 (New York Life's higher credit rating *in October 2023*);

¶¶ 68–76 (a NISA study purportedly establishing appropriate and inappropriate candidates for

PRT annuities *as of late 2022*); ¶ 85 (SSGA Trust Co.'s parent corporation's holdings in Apollo

at various times *after the Lumen PRT*) (all emphasis added).

Earlier this year, the Ninth Circuit Court of Appeals affirmed dismissal where, like here,

a plaintiff in an ERISA case based the claim on information not available at the time of the

alleged breach.  *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015 (9th Cir. 2025);

*see also Patterson v. Morgan Stanley*, 2019 WL 4934834, at *10, 14 (S.D.N.Y. Oct. 7, 2019) ("hindsight" allegations not probative of prudent process); *Kurtz*, 511 F. Supp.3d at 1197 (same). Similarly, here, Plaintiffs' fiduciary-breach claims should be dismissed for this reason alone.

## II.     No Pleaded Facts Plausibly Allege that SSGA Trust Co. Acted Disloyally.

The Court should dismiss Plaintiffs' disloyalty claim for the additional reason that Plaintiffs fail to raise a plausible inference that SSGA Trust Co., a professional independent fiduciary, acted disloyally. Plaintiffs' claim of SSGA Trust Co.'s disloyalty due to its relationships with Lumen Inc. and Athene, Compl. ¶¶ 83–87, rests on nothing more than conclusory and speculative allegations. That State Street Corp., one of the world's largest financial firms, has unrelated business relationships with both Athene (among other insurers) and Lumen Inc. (among other plan sponsors) is insufficient to create a preclusive conflict of interest.

To plead a breach of the duty of loyalty, a plaintiff must show that the fiduciary failed to "discharge his duties with respect to a plan solely in the interest of the participants" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). A plaintiff must allege "that a defendant's actions were for the purpose of providing benefits to himself or someone else—having that effect incidentally is not enough." *Kurtz*, 511 F. Supp. 3d at 1202; *see also Matney v. Barrick Gold of North America, Inc.*, 2022 WL 1186532, at *13–14 (D. Utah, Apr. 21, 2022), *aff'd on other grounds*, 80 F.4th 1136 (10th Cir. 2023) (same). Plaintiffs' allegations fail under this standard.

***First***, Plaintiffs assert that "[b]ecause State Street held such significant positions in Lumen and Apollo, it had a self-interest in increasing the value of its equity positions in both companies," which was supposedly served by selecting Athene. Compl. ¶ 86. As another court faced with materially identical allegations has already concluded, this assertion "is wholly

meretricious." *Piercy v. AT&T Inc.*, 2025 WL 2505660, at *24 (D. Mass. Aug. 29, 2025), *report and recommendation adopted*, 2025 WL 2809008 (D. Mass. Sept. 30, 2025) (dismissing complaint). To start, State Street IM is not the beneficial owner of the pleaded Lumen Inc. and Apollo shares, which it holds on behalf of its clients and the investment funds it advises. *See supra* n.5. Thus, any change in the value of those companies inures to the benefit or detriment of State Street IM's clients, not to State Street IM, and State Street IM's nominal "holding" of these shares cannot sustain an inference of disloyalty on the part of SSGA Trust Co.[11]  *See id.*

Indeed, even if Plaintiffs alleged that SSGA Trust Co. received a *direct* benefit from its fiduciary actions, which they have not done here, that would still not be enough: "[A] plaintiff must allege plausible facts supporting an inference that the defendant acted *for the purpose* of providing benefits to itself or someone else." *Johnson v. PNC Fin. Servs. Group, Inc.*, 2022 WL 973581, at *7 (W.D. Pa. Mar. 31, 2022) (emphasis in original); *accord Kurtz*, 511 F. Supp. 3d at 1202. Similar to the facts here, in *Patterson*, participants in Morgan Stanley's plan sued the company for offering "poorly performing" BlackRock funds as plan investment options, alleging "that Defendants breached their duty of loyalty to the Plan because their decision to offer the [funds] was motivated by a desire to foster a business relationship with Blackrock." 2019 WL 4934834, at *7, 14. The court rejected this theory, explaining that "the mere fact that Morgan Stanley might incidentally benefit from its relationship with BlackRock is not enough to raise an inference of disloyalty by Defendants" and that "Plaintiffs do not actually allege any facts to

---

[11] And as was the case in *Piercy*, the Complaint here is notably silent as to whether "those shares of [Lumen Inc. and Apollo] account for a significant share of [State Street IM's] total assets under management, or—indeed—whether [State Street IM] even holds those shares for its own benefit." 2025 WL 2505660, at *25. SSGA's alleged holdings of $797.4 million in Lumen Inc. shares (at most) and $437 million in Apollo shares at the time of the PRT (Compl. ¶¶ 84–85) supply nothing more than "a numerator without a denominator" and do not raise an inference of disloyal motivation. *Piercy*, 2025 WL 2505660, at *25.

suggest that Defendants' business relationship with BlackRock was contingent on Defendants offering BlackRock's [funds] in the Plan." *Id.* at *14. "Put simply," the court concluded, "the mere existence of a business relationship between two large financial institutions is not enough to lift Plaintiffs' otherwise deficient disloyalty claims above the bar set by *Twombly*." *Id.* The same is true here of Plaintiffs' allegations concerning SSGA Trust Co. stock holdings. Compl. ¶¶ 84–85. Indeed, here the facts are far more attenuated: Apollo and Lumen Inc.'s value—even if impacted by the PRT—do not impact State Street IM's wealth because State Street IM has no economic interest in the Apollo and Lumen Inc. stock it "holds." And, of course, at the time of the PRT, Apollo had not completed its acquisition of Athene, which closed in 2022. Compl. ¶ 47.

**Second**, even the State Street IM-advised funds' holdings of Apollo and Lumen Inc. stock say nothing about favoritism by State Street IM. Index funds, like those offered by State Street IM, "consist[] of an aggregation of direct or indirect ownership interests in all companies within a particular published index – which may pertain to an entire market, such as the S&P 500, or a sector of that market." *Piercy*, 2025 WL 2505660, at *25 n.18. Thus, SSGA, as "the purveyor of an indexed product that included [Lumen Inc.] or Apollo would also be holding shares in those companies' competitors, in fixed proportions." *Id.* Simply put, SSGA "is not placing bets, one way or the other, on the success of any particular company." *Id.* Thus, as the *Piercy* court held with respect to identical allegations, "[m]ere ownership of shares is insufficient to establish a conflict; still less so when the allegations do not specify the nature of the ownership and how such ownership would give rise to an inference that [State Street IM's] motive was to further its own interests." *Id.* at *25.[12]

---

[12] *Doherty v. Bristol-Meyers Squibb Co.*, 2025 WL 2774406 (S.D.N.Y. Sept. 29 2025)—the only

Like *Piercy*, courts consistently reject ERISA loyalty claims, like here, premised on defendants' supposed disloyal motives without some factual basis to draw a plausible conclusion that an action was disloyally motivated. *Matney*, 2022 WL 1186532 at *14 (dismissing loyalty claim); *Jones v. Dish Network Corp.*, 2023 WL 2644081 at *8 (D. Colo. Mar. 27, 2023) (same); *Kurtz*, 511 F. Supp. 3d at 1202 (same). The mere allegation that SSGA Trust Co.'s parent entities may have "incidentally" benefited from SSGA Trust Co.'s fiduciary actions does not alone state a claim for breach of fiduciary duty under ERISA. *Kurtz*, 511 F. Supp. 3d at 1202; *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 337 (S.D.N.Y. 2024) (rejecting "conclusory allegation" that defendants' actions were driven by self-interest).[13]

## III.  Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co. Employed an Imprudent Process.

Plaintiffs also allege that SSGA Trust Co. acted imprudently in selecting Athene. Compl. ¶¶ 116–123. They assert that, "relative to other providers in the market," SSGA Trust Co. failed to select the "safest annuity available," which, they claim, is required under the DOL's Interpretive Bulletin 95-1 ("IB 95-1"), 29 C.F.R. § 2509.95-1. Compl. ¶¶ 119–120. But Plaintiffs' sparse, conclusory allegations do not plausibly raise an inference of imprudence.

---

other decision on the merits of a motion to dismiss in the recent wave of suits challenging PRTs with Athene—came to the opposite conclusion of *Piercy* through a faulty analysis. The *Doherty* court erred in two respects. First, it drew a false equivalence between SSGA Trust Co.'s and Bristol-Meyers' interest in the value of Bristol-Meyers stock. By concluding that SSGA Trust Co. "***directly benefit[ed]***," *id.* at *13, from the hypothetical increase in the value of Bristol-Meyers stock resulting from the PRT, the *Doherty* court overlooked the fact that State Street IM is not the beneficial owner of the shares it holds and has no economic interest in them. *See* pp. 2, 7 *supra*. Second, the court failed to grapple with the robust caselaw holding that direct benefits to a fiduciary do not raise an inference of disloyalty in any event unless coupled with plausible allegations of subjective disloyal motivation. *See* pp. 7-8 *supra*.

[13] Plaintiffs also allege that SSGA Trust Co. was conflicted because State Street IM earns revenue from providing custodial services to Athene. Compl. ¶ 85. This, too, fails because Plaintiffs do not allege that such business was "contingent" on, or otherwise related to, SSGA Trust Co. selecting Athene for the Lumen PRT. *Patterson*, 2019 WL 4934834, at *14.

ERISA requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  The statutory standard is process-based:  "the prudence test—the Prudent Man Rule—is one of conduct," and courts "therefore focus on the process the fiduciary uses rather than the outcome of the Plan or investments."  *Kurtz*, 511 F. Supp. 3d at 1196–97; *see also Birse v. CenturyLink, Inc.*, 2019 WL 1292861 at *3 (D. Colo. Mar. 20, 2019), *abrogated on other grounds by Hughes,* 595 U.S. 170.  Where ERISA plaintiffs fail to plead any facts regarding the actual process the fiduciaries used, they face an even higher burden:  they must allege sufficient factual matter from which the Court can reasonably infer a flawed process.  *See Kurtz*, 511 F. Supp. 3d at 1196–97 (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)).

Here, the Complaint does not contain a single allegation concerning SSGA Trust Co.'s process in selecting Athene.  Instead, Plaintiffs rely on a litany of speculative and conclusory allegations about the supposed riskiness of Athene, a leading annuity provider chosen by many other fiduciaries, which they say support an inference that its selection by SSGA Trust Co.— itself a leading, professional independent fiduciary—could not have been the product of a prudent process.  These allegations are insufficient to raise an inference of imprudence because they fail to "permit[] the court to infer more than a mere possibility of misconduct."  *Matney*, 2022 WL 1186532 at *4; *see Kurtz*, 511 F. Supp. 3d at 1198.

A.    **Plaintiffs' Reliance On Interpretative Bulletin 95-1 Is Flawed.**

The only authority Plaintiffs cite in support of their prudence claim is the DOL's non-binding guidance in IB 95-1, which sets forth a non-exhaustive list of six factors fiduciaries "should consider" in selecting an annuity provider for a PRT.  *See* 29 C.F.R. § 2509.95-1(c).

Tellingly, no federal court has adopted that standard. Moreover, Plaintiffs do not allege that

SSGA Trust Co. failed to consider the IB 95-1 (or other) factors. Their claim fails.

*First*, "no federal court has adopted" the "'safest available' standard urged by the DOL."

*Riley v. Murdock*, 83 F.3d 415, 415 (4th Cir. 1996) (unpublished). Indeed, the DOL's

interpretation is unmoored from ERISA's text, which contemplates a wide "range of reasonable

judgments a fiduciary may make" for any given decision. *Hughes*, 595 U.S. at 177. DOL's

prescriptive, outcome-oriented "safest annuity available" standard contravenes ERISA's flexible,

process-based standard, which is why courts have rejected it as inconsistent with the statutory

text. *See Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 297–298 (5th Cir. 2000). This Court

should not be the first to adopt it.[14]

*Second*, Plaintiffs' claims fail even under the DOL's non-binding bulletin. Plaintiffs

assert that, under the DOL's "safest annuity" standard, there can be only one permissible choice

of annuity provider. *E.g.*, Compl. ¶¶ 3, 4, 40, 97. The DOL says no such thing. To the contrary,

IB 95-1 clearly says that "[a] fiduciary may conclude ... that *more than one* annuity provider is

able to offer the safest annuity available." 29 C.F.R. § 2509.95-1(c) (emphasis added).[15]

Furthermore, even IB 95-1 expressly states that its guidance to select the safest

provider(s) available does not apply if, "under the circumstances it would be in the interests of

participants and beneficiaries to do otherwise." 29 C.F.R. § 2509.95-1(c). *See also* 29 C.F.R.

---

[14] Even before *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), courts declined to afford
the DOL's interpretation deference under *Chevron U. S. A. Inc. v. Natural Resources Defense
Council, Inc.*, 467 U.S. 837 (1984). *See, e.g.*, *Bussian*, 223 F.3d at 297. And because it
contravenes ERISA's text and is internally inconsistent, DOL's interpretation "lack[s] the
persuasive force" for deference under *Skidmore v. Swift & Co.*, 323 U. S. 134 (1944). *See
generally Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013).

[15] Plaintiffs themselves appear to recognize as much, pointing to at least three other annuity
providers that would otherwise be "clear candidates" for "safest annuity available." Compl.
¶¶ 68, 71.

§ 2509.95-1(d) ("there are situations where it may be in the interest of the participants and beneficiaries to purchase other than the safest available annuity").  A partial PRT, such as here, is one such situation.  Here, the Plan was not terminated, so SSGA Trust Co. also owed fiduciary duties to Plan participants who remained in the Plan.  Plaintiffs allege that Athene charged less than its competitors.  *E.g.*, Compl. ¶¶ 86, 103, 120.  Any resulting savings would have benefitted those participants who remained in the Plan after the PRT.  The assertion that SSGA Trust Co. could satisfy its fiduciary duties only by choosing an arguably safer but more expensive insurance provider for this partial PRT would be inconsistent with its fiduciary obligations to the participants remaining in the Plan not to incur unreasonable expenses in effecting the PRT.  *See* 29 U.S.C. § 1104(a)(1)(A)(ii) (a fiduciary shall "defray[] reasonable expenses of administering the plan"); *see generally Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 540–41 (5th Cir. 2016) (discussing competing claims of plan transferees and those remaining in the plan premised in part on the potential for incurring unreasonable expenses in purchasing annuity contracts).

**Third**, Plaintiffs' challenge to Athene's suitability based on the IB 95-1 factors are implausible.  For example, Plaintiffs challenge the adequacy of the "level of [Athene's] capital and surplus" (IB 95-1 factor 3) by claiming that Athene had a low surplus-to-liability ratio. Compl. ¶¶ 50–52.  But Plaintiffs do not allege that surplus-to-liability ratio is a commonly used metric for assessing capital and surplus.  Rather, an insurer's risk-based capital ratio (RBC) is the primary measure by which insurance regulators evaluate the capital adequacy of insurers, *see Robainas v. Metro. Life Ins. Co.*, 2015 WL 5918200, at *1 (S.D.N.Y. Oct. 9, 2015), and Athene's was (and is) strong.  At the time of the Lumen PRT, Athene's RBC ratio was 377%[16],

---

[16] Athene Holding Ltd. 2021 10-K at 9, 36, 125, https://perma.cc/MB6Q-ZE3V.

nearly double the amount required under Iowa law.[17]

Moreover, Plaintiffs offer an apples-to-oranges comparison for their inapposite metric in any event.  Plaintiffs compare the *2023* surplus-to-liability ratio of Athene Annuity and Life Co. (*i.e.*, one subsidiary of Athene Holding Ltd.)—two years after the Lumen PRT—to that of the *parent companies* of an alleged alternative annuity provider.  Plaintiffs allege that subsidiary Athene Annuity and Life Co.'s surplus-to-liability ratio was 1.44% as of year-end 2023.  Compl. ¶¶ 50–51.[18]  Plaintiffs allege that this ratio compared unfavorably to that of New York Life Insurance Company (Compl. ¶ 51), which is a parent company that operates several insurance subsidiaries, including New York Life Insurance and Annuity Company.[19]  Plaintiffs' failure to compare Athene and New York Life at the parent company level is no mistake.  Parent Athene Holding Ltd.'s 2023 surplus and liabilities were $21.8 billion and $279 billion, respectively,[20] resulting in a surplus-to-liability ratio of 7.8%, which exceeds Plaintiffs' own alleged average. Compl. ¶ 51.  In short, Plaintiffs surplus-to-liability allegation is an "apples to oranges" comparison, which courts have consistently held cannot support any inference of imprudence under ERISA.  *See Matney*, 80 F.4th at 1149; *see also*, *e.g.*, *Anderson*, 137 F.4th at 1025.

---

[17] *See* Iowa Code § 521E.1(12)(a); *see also* Athene Holding Ltd. 2021 10-K at 36, https://perma.cc/MB6Q-ZE3V (reflecting 200% minimum RBC ratio).

[18] It is clear from publicly-available documents that the 1.44% surplus-to-liability ratio that Plaintiffs attribute to "Athene" (Compl. ¶ 50) is the surplus-to-liability ratio for subsidiary Athene Annuity and Life Co., whose reported surplus and liabilities as of year-end 2023 were $2,865,879,257 and $199,104,571,460, respectively, resulting in the 1.44% ratio Plaintiffs allege at Compl. ¶ 50.  *See* Fourth Quarter 2023 Statutory Financial Statement for Athene Annuity Life Company (Dec. 31, 2023) at 3, https://tinyurl.com/mrx97a25.

[19] New York Life Insurance Company Audited Financial Statements (December 31, 2023) at 3, https://tinyurl.com/NY-Life-financials (reporting total surplus of $25.3 billion and total liabilities of $206.6 billion); *see also id.* at 8, 97, 101, 102 ("New York Life Insurance Company . . . and its subsidiaries offer a wide range of insurance and investment products.").

[20] Athene Holding Ltd. 2023 10-K at 108, 122–123, https://perma.cc/6EEF-C87D.

Similarly, Plaintiffs allege "on information and belief" that Athene's separate account used to pay Lumen retirees (IB 95-1 factor 5) "may also be used to support Athene's payment obligations under other, separate [group annuity contracts] issued by Athene."  Compl. ¶ 65. This allegation does not undermine the security of Athene's separate account, which is overseen by relevant insurance commissioners.[21]  Plaintiffs do not allege any facts suggesting that Athene's separate account is insufficiently capitalized to meet its current and future obligations to them, or that any regulator has declined to approve the investment of the separate account or to have taken any action to assure its solvency.  *Cf. U.S. ex. Rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54 (1923) ("Silence is often evidence of the most persuasive character.").  And as the Complaint itself recognizes, separate-account funds may be transferred to Athene's general account only "if the market value of the assets in the separate account exceeds Athene's liabilities under the GACs."  Compl. ¶ 65.  Accordingly, under Plaintiffs' own pleading, Athene cannot cause the separate account assets to drop below the amount required to pay them.

### B.    Athene's Supposed Credit Risk Does Not Imply a Deficient SSGA Trust Co. Process.

Plaintiffs allege that SSGA Trust Co.'s process must have been deficient based, in part, on an October 2022 report by NISA Investment Advisors (the "NISA Report") *published a year after the PRT transaction*.  Compl. ¶¶ 68–76.  The NISA Report purportedly quantifies a 14%

---

[21] The insurance laws of Iowa required Athene to file a "plan of operation" for its separate account for approval by the insurance commissioner before issuing any group annuity contracts. IAC §§ 191-96.1 to 191-96.12.  Such plan of operation must include, among other things, a "description of the allowable investment parameters (such as objectives, derivative strategies, asset classes, quality, duration and diversification requirements applied to the assets held within the segregated portfolio)" and an explanation of "how the investments in the segregated portfolio reflect provision for benefits insured by the contract and how the contract value and market values and the rates of return may be affected by changes in the investment returns of the segregated portfolio."  IAC §§ 191-96.5.  Plaintiffs do not allege, because they cannot, that any insurance regulators have taken—or have even threatened to take—any remedial actions against Athene based on its practices concerning its separate account or how it was invested.

economic loss to beneficiaries whose pension benefit obligations have been transferred to Athene

as a result of Athene's "credit risk," which Plaintiffs allege is further evidence that Athene's

annuities are unsafe.  *Id.* ¶ 68.  NISA quantifies this supposed credit risk by taking a given

insurance company's bond spread and subtracting the bond spread of New York Life (NISA's

preferred provider).  *Id* ¶ 69.  This bespoke analysis is not relevant here.  Despite acknowledging

that the "use of a separate account will indeed improve the credit risk of all the insurers

[analyzed by NISA], assuming each is willing to offer that additional safeguard," the NISA

Report does not even attempt to measure risk for such products or inquire whether all the

insurers it analyzed offered a separate account.[22]  Because Athene utilizes a separate account to

pay Lumen retirees, the NISA Report does not offer an "apples-to-apples" comparison that could

support any inference of imprudence.  *Matney*, 80 F.4th at 1150; *Anderson*, 137 F.4th at 1025.

Moreover, the NISA Report offers only a single data point that is subject to significant

fluctuation, and therefore is not probative of the absence of a prudent process—particularly one

that preceded the date of the NISA Report.  For example, NISA's subsequent September 2025

report shows that the supposed "loss" from Athene has improved more than two-thirds, from

14% in 2022 (Compl. ¶ 68) to 3.9% in 2025.[23]  That fluctuation also undermines Plaintiffs'

reliance on this metric, and it especially undermines any inference from an outdated number.[24]

_____

[22] David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx ("Calculating the adjusted ELB [for separate-account annuities] is outside the scope of this paper[.]") (cited in Compl. ¶¶ 68–76).

[23] PRT Credit Risk Monitor, NISA, https://perma.cc/8ZE2-VSJ7.  The Court may consider this document because it is the current version of a dynamic website relied on by Plaintiffs and incorporated in the Complaint at paragraphs 68–76.

[24] Notably, NISA's September 2025 report identifies Prudential as NISA's second-safest provider—yet other plaintiffs separately sued SSGA Trust Co. for selecting Prudential for a different PRT.  *See* Complaint, *Dempsey, et al. v. Verizon Communications Inc., et al.*, No. 1:24-cv-10004 (S.D.N.Y. Dec. 30, 2024); Complaint, *Spohn v. IBM.*, No. 1:25-cv-12475 (D. Mass. Sept. 5, 2025).  That underscores the implausibility of relying on NISA as a circumstantial

In all events, NISA simply represents one opinion.  If all market participants shared the

precise same view as to credit-worthiness, then there would be no need for the "objective,

thorough and analytical search" that even Plaintiffs' own authority—IB 95-1—suggests.  *See* 29

C.F.R. § 2509.95-1(c) (listing factors).  Indeed, courts recognize that "negative analyst reports,"

like NISA's, "are insufficient to create a duty . . . to question the prudence of [an investment]."

*In re RCN Litig.*, 2006 WL 1273834, at *8 (D.N.J. Mar. 22, 2006) (dismissing complaint).

### C. Athene's Connection to Private Equity Does Not Imply a Deficient SSGA Trust Co. Process.

The Complaint asserts that Athene's affiliation with Apollo, which separately engages in

private equity investing, prevents Athene from being a prudent annuity provider for a PRT

because the "mission of private equity does not align with the interests of annuitants."  Compl.

¶ 42.  But the Complaint admits that Apollo's merger with Athene happened after the Lumen

PRT.  Compl. ¶ 47.  In any event, Plaintiffs acknowledge that involvement with private equity is

common in the industry.  Compl. ¶ 43 (noting "private equity's increasing role in the insurance

and annuity industry").  Moreover, courts recognize that it is common for employer pension

plans to be heavily invested in private equity.  *See Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909

F.3d 1069, 1077 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020).  And at least one court has recently

rejected a similar theory that investment in private equity is "inherently so risky" as to support an

inference of fiduciary breach.  *Anderson*, 137 F.4th at 1024.  Plaintiffs' generalized grievances

with private equity-affiliated insurers are "conclusory and insufficient, given that Plaintiff[s]

fail[] to offer specific facts about [SSGA Trust Co.'s] purportedly flawed process."  *Hutchins v.*

*HP Inc.*, 767 F. Supp. 3d 912, 926 (N.D. Cal., 2025); *Kurtz*, 511 F. Supp. 3d at 1191, 1202.

Plaintiffs also assert that "*[t]oday* approximately 20% of Athene's portfolio is invested in

_____

indicator of an imprudent process.

risky asset-backed securities and leveraged loans" and that a portion of those investments were in the "unfavorable BBB category, a higher concentration than that of most other U.S. life insurers."  Compl. ¶¶ 47, 49.  This allegation does not plausibly raise an inference of imprudence; not only does it post-date the PRT, but Plaintiffs also do not allege that they are comparing Athene only to other insurers that participate in the PRT market.  Furthermore, the conclusion that Athene's portfolio is "risky" is directly refuted by Athene's SEC-filed financial statements—both at the time of the Lumen PRT and today.  They show that in 2021 over 93% of Athene's investments were "investment grade," bearing the highest NAIC ratings of 1 or 2.[25]  As of last year, over 96% of Athene's investments were "investment grade."[26]  And Plaintiffs' conclusory allegation about BBB-rated investments is similarly unavailing: a BBB rating corresponds to the second-highest NAIC rating and is considered "investment grade."[27]  Indeed, as the Complaint admits, all credit rating agencies have affirmed Athene's creditworthiness with A or A+ ratings.  Compl. ¶¶ 74–76.  Plaintiffs themselves allege that 95% of issuers holding an average rating of "A" from the rating agencies—a rating that is inferior to Athene's average rating—do not default over a twenty-year horizon.  Compl. ¶ 76.

Next, Plaintiffs allege that Athene is at risk of default because of its use of Bermuda-based reinsurers.  Compl. ¶¶ 47–49, 55–56, 60–64, 97.  This too is implausible, because the assertion that Bermuda law is less stringent than other jurisdictions is inapplicable here: judicially noticeable public disclosures demonstrate that Athene requires its Bermuda subsidiaries to adhere to the same capital, risk, and disclosure standards *as its U.S.*

---

[25] Athene Holding Ltd. 2021 10-K at 102, https://perma.cc/MB6Q-ZE3V.

[26] Athene Holding Ltd. 2024 10-K at 85–86, https://perma.cc/VLS7-GZ5X.

[27] *Id.* at 85, 85–87.

*subsidiaries*.[28]  Accordingly, at the end of 2021, Athene's Bermuda-based reinsurance affiliates

had billions in surplus assets and the same A and A+ ratings as Athene.[29]  In all events, Bermuda

is an established, well-regulated jurisdiction for insurance, deemed regulatorily equivalent to the

U.S. by relevant state insurance commissioners.[30]  Moreover, the use of Bermudian reinsurers is

common; other major life insurers that leverage Bermuda reinsurance include AIG, MetLife, and

Prudential—the latter of which is the second-safest provider, according to NISA.[31]

### D.    Other Purported Concerns With Athene Do Not Sustain the Complaint.

Plaintiffs allege that Athene "relies on unreliable private letter ratings" from "smaller,

private credit rating agencies" Kroll Bond Rating Agency ("KBRA") and DBRS Inc. ("DBRS")

to make its investment portfolio appear to be of higher quality.  Compl. ¶¶ 79-81.  But KBRA

and DBRS are not unreliable rating agencies; they are among the 10 Nationally Recognized

Statistical Rating Organizations (NRSROs) recognized by the SEC.[32]  Moreover, Athene

discloses both the "NAIC's [quality] designation" and the "NRSRO rating agency designation"

of its investments (including collateralized loan obligations)[33] and the ratings of S&P, Moody's,

---

[28] Athene Holding Ltd. 2021 10-K at 25, https://perma.cc/MB6Q-ZE3V ("We maintain the same reserving principles for our Bermuda reinsurance subsidiaries as we do for our US insurance subsidiaries."); *id.* at 33, 35 (Athene's Bermuda reinsurance subsidiaries are registered as Class C insurers and are required to file annual financial statements "prepared in accordance with accounting principles generally accepted in the US (GAAP)").

[29] *Id.* at 25–26 (ratings); *id.* at 125 (surplus).

[30] *NAIC List of Reciprocal Jurisdictions,* NAIC, https://perma.cc/XEM8-VTDY.

[31] *See e.g.*, Prudential Fin'l, Inc. 2023 10-K at 2, 24, 30, 125, https://perma.cc/4UUJ-5S8M (discussing Bermuda-based reinsurance affiliates); MetLife, Inc. 2023 10-K at 108, 326, https://perma.cc/AD6P-EQQC (same); AIG 2023 10-K at 10, https://tinyurl.com/4yjey9eh (same).

[32] *Piercy*, 2025 WL 2505660, at *33.

[33] *See, e.g.*, Athene Holding Ltd. 2021 10-K at 101–04, https://perma.cc/MB6Q-ZE3V.

and Fitch (Plaintiffs' preferred rating agencies) as well as KBRA and DBRS.[34]  Thus, the notion

that Athene's additional use of KBRA's and DBRS's ratings should have been a cause of

concern to SSGA Trust Co. is implausible.

Plaintiffs also allege that in 2019 Athene was investigated by the State of New York

regarding its PRT business.  Compl. ¶ 82.  This investigation, however, did not relate in any way

to the alleged riskiness of Athene's annuities or the manner in which it invested the separate

account backing its obligations to Plaintiffs.  Rather, it related to a purely jurisdictional matter—

the involvement of employees of Athene's non-New York-domiciled subsidiary in insurance

transactions involving New York residents.  And Athene's New York-domiciled subsidiary has

been allowed to continue its PRT business.[35]

\*       \*       \*

In short, Plaintiffs' fiduciary-breach claims fail.  Their allegations—facts and data that

they say, if taken into account, would have caused fiduciaries to not select Athene—almost

entirely postdate the Lumen PRT and therefore are irrelevant to whether SSGA Trust Co. acted

appropriately "under the circumstances … prevailing" in October 2021.  In any event, with the

relevant context taken into account, none of Plaintiffs' allegations plausibly suggests that the

selection of Athene was outside of the wide "range of reasonable judgments a fiduciary may

make based on her experience and expertise."  *Hughes*, 595 U.S. at 177.  The Court should

follow the thorough and well-reasoned decision in *Piercy*, which found virtually identical

allegations (stronger, even, given that they did not pre-date the AT&T PRT at issue) "failed to . .

. establish the inference that 'a prudent fiduciary in the [Defendants'] position could not have

---

[34] *Id.* at 101–02.

[35] *See generally*, Consent Order, *In re Athene Annuity and Life Co., Athene Holding Ltd.*, New York State Dept. of Fin. Servs. (Apr. 13, 2020), https://tinyurl.com/4tdjrrh6 (cited Compl. ¶ 82).

concluded that' Athene was an appropriate annuity provider."  2025 WL 2505660, at *42.  As

the Magistrate's Report & Recommendation identified, all the complaints that Plaintiffs raise

about Athene are known to the regulators, who have declined to bar Athene from the PRT

marketplace, which is what Plaintiffs essentially seek through this litigation.  *Piercy*, 2025 WL

2505660, at *33–35.

## IV.    Plaintiffs' Prohibited Transaction and Co-Fiduciary Liability Claims Fail.

Plaintiffs argue that SSGA Trust Co. is also liable for any "losses caused by the breach of

its co-fiduciary duties under 29 U.S.C. § 1105(a)."  Compl. ¶ 123.  As Lumen argues in its brief,

it is not a fiduciary and did not violate ERISA.  Further, as described herein, SSGA Trust Co. did

not breach any duty either.  "Plaintiffs have failed to plausibly allege a breach of fiduciary duty

by any of the Defendants.  Plaintiffs' claims for co-fiduciary liability must therefore be

dismissed."  *Bloom*, 725 F. Supp. 3d at 344; *see Matney*, 80 F.4th at 1159.

Plaintiffs' prohibited transaction claim (Count IV) fails because Athene was not a party

in interest, as Lumen explains in its brief.

## CONCLUSION

For the foregoing reasons, and those asserted in Lumen's memorandum, the Complaint

should be dismissed with prejudice.

Dated: October 15, 2025                            Respectfully submitted,

                                                   /s/ *James O Fleckner*
Jaime A. Santos                                    James O. Fleckner
Benjamin S. Reilly                                 GOODWIN PROCTER LLP
GOODWIN PROCTER LLP                                100 Northern Avenue
1900 N Street, NW                                  Boston, MA 02210
Washington, DC 20036                               Tel.: (617) 570-1000
Tel.: (202) 346-4000                               Fax: (617) 523-1231
Fax: (202) 346-4444                                JFleckner@goodwinlaw.com
JSantos@goodwinlaw.com
BReilly@goodwinlaw.com                             *Counsel for State Street Global Advisors*
                                                   *Trust Company*

**<u>CERTIFICATE OF SERVICE</u>**

I, James O. Fleckner, certify that a copy of the foregoing document, filed through the

CM/ECF system, will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF) on October 15, 2025.


Dated: October 15, 2025                            <u>/s/ *James O. Fleckner*</u>
                                                   James O. Fleckner