IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 24-cv-02434-LTB-TPO

DOLLY DOW, and
VIRGINIA SAKAL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LUMEN TECHNOLOGIES, INC.,
LUMEN EMPLOYEE BENEFITS COMMITTEE,
CENTURYLINK INVESTMENT MANAGEMENT COMPANY,
KATHLEEN M. LUTITO,
STATE STREET GLOBAL ADVISORS TRUST CO., and
JOHN DOES 1–5,

Defendants.

---

MEMORANDUM OPINION AND ORDER

---

Lewis T. Babcock, Senior United States District Judge

This case is before me on Defendants Lumen Technologies, Inc. ("Lumen"), Lumen Employee Benefits Committee, CenturyLink Investment Management Company, and Kathleen M. Lutito (collectively "the Lumen Defendants") Motion to Dismiss Amended Complaint [ECF No. 72]. By the Motion, the Lumen Defendants seek the dismissal of Plaintiffs' Amended Complaint ("AC") [ECF No. 59] for lack of subject-matter jurisdiction under Fed. R. Civ. P 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

After consideration of the Motion and all related case filings including the accepted amicus brief of the ERISA Industry Committee, the American Benefits Council, and the Committee on Investment of Employee Benefit Assets Inc. [ECF No. 75-1], I grant the Lumen Defendants' Motion for the reasons set forth below.

## I. Background

This case involves the Lumen Combined Pension Plan ("the Plan"), a defined-benefit pension plan sponsored by Lumen and governed by ERISA. AC ¶¶ 23-24. Under a defined-benefits pension plan, a sponsor/employer agrees to pay monthly fixed benefits to retirees. *Id.* at ¶¶ 39-41.

In October of 2021, the Lumen Defendants entered into an agreement for a pension risk transfer ("PRT"). *Id.* at ¶ 196. Through a PRT, an employer purchases group annuity contracts with plan assets from an insurer, who then assumes the responsibility for future benefit payments to employees and retirees covered by the transaction. *Id.* at ¶ 42. PRTs are expressly authorized under ERISA. *See* 29 U.S.C. § 1341(b)(3)(A)(i) ("In connection with any final distribution of assets pursuant to the standard termination of [a single-employer ERISA plan], the plan administrator shall distribute the assets…. In distributing such assets, the plan administrator shall – (i) purchase irrevocable commitments from an insurer to provide all benefit liabilities under the plan, or ….").

The PRT purchased by Lumen involved the transfer of approximately $1.4 billion of the Plan's pension obligations to 22,600 Plan participants, including Plaintiffs. *Id.* at ¶ 196. Following the PRT, Plaintiffs' benefits were longer protected

by the Pension Benefit Guaranty Corporation ("PBGC") but were instead protected by state guaranty associations ("SGAs"). *Id.* at ¶ 46. Unlike the PBGC, SGAs are not pre-funded by plan sponsor-paid premiums, and the protection they provide vary by state. *Id.* at ¶¶ 47-51.

The Lumen Defendants engaged Defendant State Street Global Investors Trust Co. ("State Street") as an independent fiduciary to select the insurer for the PRT. *Id.* ¶ 197. Lumen, on the advice of State Street, selected Athene as the insurer. *Id.* at ¶ 201. Athene is a private-equity controlled insurer with an A+ credit rating on a range from AAA to D. *Id.* at ¶¶ 75, 142, 144, 145.

Plaintiffs allege that Athene's holding and practices are "far riskier than traditional providers and expose Plaintiffs … to a high risk of default." Opposition to Motion, ECF No. 84, at 5. Among other things, Plaintiffs allege that Athene exploits lax Bermuda regulatory standards; holds a high concentration of risky assets; has been found less safe than other traditional annuity providers by independent analysts using objective measures; and has a far riskier "separate" account to fund its annuity liabilities than its competitors. AC at ¶¶ 97-100, 107-111, 113-118, 136-147, 150-161. Plaintiffs allege Lumen financially benefitted from its selection of Athene because of the lower purchase price as compared to traditional annuity providers and its savings on premiums previously paid to the PBGC. *Id.* at ¶¶ 212-213.

Athene assumed responsibility for paying the pension benefits of Plan

participants and beneficiaries covered by the PRT on or around December 31, 2021. *Id.* at ¶¶ 203. Plaintiffs do not allege that Athene has ever failed to pay the full benefits owing under the Plan.

## II. Standard of Review

### A. Legal Standards Governing a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) provides for challenges to a court's subject matter jurisdiction. *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003). The party asserting subject matter jurisdiction bears the burden of proving that it exists. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

The court's task in resolving a motion under Rule 12(b)(1) is determining whether it lacks authority to adjudicate the matter. *Glapion v. Castro*, 79 F.Supp.3d 1207, 1212 (D. Colo. 2015) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the case. *Id. See also Hanford Downwinders Coal., Inc. v. Dowdle*, 841 F. Supp. 1050, 1057 (E.D. Wash. 1993) ("The issue [in resolving a 12(b)(1) motion] is not whether plaintiff will ultimately succeed on the merits….").

"For purposes of ruling on a motion to dismiss for want of standing, … courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

### B. Legal Standards Governing a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To survive a motion to dismiss, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.*, 550 U.S. at 555. *See also Iqbal,* 556 U.S. at 678 (a complaint will not suffice if it tenders "naked assertions devoid of further factual enhancement"). The Court does not have to accept conclusory allegations as true. *Southern Disposal, Inc. v. Tex. Waste Mgmt.,* 161 F.3d 1259, 1262 (10th Cir. 1998). "A conclusory allegation is one in which an inference is asserted without stating underlying facts or including any factual enhancement." *Matney v. Barrick Gold of N. Am.,* 80 F.4th 1136, 1145 (10th Cir. 2023) (internal quotation marks and citation omitted).

## III. Analysis

### A. Article III Standing

Every plaintiff in federal court must establish Article III standing. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). To meet this requirement, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021) (citing *Lujan,* 504 U.S. at 560-561). "There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.,* 590 U.S. 538, 547 (2020).

An injury in fact is not satisfied by a mere statutory violation and may not be conjectural or hypothetical. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339-341 (2016). For an injury to be "actual or imminent, not speculative … the injury must have already occurred or be likely to occur soon." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes - that the injury is *certainly* impending." *Clapper*, 568 U.S. at 401 (quoting *Lujan,* 504 U.S. at 565 n.2 (1992)). "[A]llegations of *possible* future injury are not sufficient." *Id.* at 409 (internal quotations and citation omitted).

Relying on *Thole* and case law applying its reasoning, the Lumen Defendants argue that Plaintiffs lack Article III standing because they fail to plausibly allege

an injury in fact. In *Thole*, the Supreme Court held that participants in a defined-benefit pension plan lacked Article III standing to pursue their claims for plan mismanagement under ERISA because they had received all of their vested pension benefits to date and were legally entitled to receive the same monthly payments for the rest of their lives. *Id.* at 542. Here too, Plaintiffs have received all benefits owed to them since Athene became obligated for payment beginning in December of 2021 and are entitled to continue receiving them. *Thole* did not, however, involve the transfer of pension obligations as is the case here, and further analysis of Plaintiffs' alleged injury is therefore necessary.

Other district courts have addressed *Thole's* reasoning in cases involving PRT transactions and reached conflicting results on the question of standing. *See, e.g., Doherty v. Bristol-Myers Squibb Co.,* 2025 WL 2774406, at *3 (S.D.N.Y. Sept. 29, 2025), *certified for interlocutory appeal,* 2025 WL 3204436 (S.D.N.Y. Nov 17, 2025) ("… Plaintiffs have shown an injury necessary to confer Article III standing … because they have sufficiently alleged that the Athene transaction created a substantial risk that Plaintiffs will not receive their benefits and that the Athene transaction diminished the value of Plaintiffs' benefits."); *Bueno v. Gen. Elec. Co.,* 2025 WL 2719995, at **10-18 (N.D.N.Y. Sept. 24, 2025) (dismissing plaintiffs' claims for lack of Article III standing because they failed to allege facts plausibly alleging that there has been any actual present loss of value of their benefits; any concrete injury related to the alleged breach of fiduciary duty; or an injury based on a substantial risk of future harm); *Piercy v. AT&T Inc.,* 2025 WL 2505660, at **12-

13 (D. Mass. Aug. 29, 2025) (denying motion to dismiss for lack of Article III standing because "… an annuity recipient is immediately and concretely harmed if she receives an annuity with a 'substantially increased risk' of default than what she is entitled to."); *Camire v. Alcoa USA Corp.,* 2025 WL 947526, at **3-7 (D.D.C. Mar. 28, 2025) (dismissing claims for lack of standing because *Thole* foreclosed plaintiffs' arguments that they have suffered actual harm as a result of a PRT because the transaction "degraded" the value of their benefits; defendants failed to purchase the annuity that would best promote their interests; and defendants misuse of plan assets harmed their concrete interests protected by ERISA and plaintiffs' failed to alleged a concrete, impending injury based on risk of future harm). The outcome of pending appeals in some of these cases may help resolve this conflict in the future. There is, however, no controlling authority to guide the Court's analysis.

Taking a cue from the cases finding that plan participants whose benefits are affected by a PRT suffered an injury in fact despite the continued payment of their benefits, Plaintiffs argue that they have plausibly pled standing under Article III standing because (1) the PRT reduced the value of their pensions by removing them from the Plan and ERISA's protective regime and subjecting them to a riskier guarantor in Athene; (2) there is a substantial risk that Athene will default and cause harm to Plaintiffs in the future; (3) they need not suffer an economic harm to be entitled to the disgorgement of Lumen's profits and declaratory and injunctive relief; and (4) they have statutory standing under 29 U.S.C. § 1132(a)(9) even if they

are unable to satisfy the requirements for standing under Article III. I will address each of these arguments in turn.

**1. Reduction in Value**

"[P]lan participants possess no equitable or property interest in the plan." *Thole,* 590 U.S. at 543. Since Plaintiffs cannot sell or otherwise transfer their pension benefits, there is no current harm to them based on a hypothetically decreased value of these benefits following the PRT. Plaintiffs' benefits under the Plan are fixed and will not change regardless of the payor or whether they fall within the purview of ERISA.

Plaintiff's theory that they suffered a current cognizable harm by losing certain protections under ERISA is also unavailing because it cannot be squared with the fact that ERISA expressly authorizes PRTs. Plaintiffs had no right for their pension benefits to remain within the purview of ERISA and cannot base standing on the loss of this non-existent right.

Accordingly, any alleged decrease in the value of Plaintiffs' pension benefits that has no bearing on the amounts due and owing to them is not a sufficient injury in fact to support Article III standing.

**2. Risk of Future Harm**

In *Thole*, the Supreme Court acknowledged that a substantially increased risk of default and non-payment of benefits might present the kind of concrete injury needed for a cognizable claim arising from mismanagement of a define

benefit plan but did not rule on this issue because the plaintiffs did not assert this theory of standing. *Id.* at 546.

In contrast to *Thole,* Plaintiffs' AC clearly alleges that the transfer of their pension benefits to Athene substantially increased the risk that these benefits would be unpaid because of the risk that Athene will fail. To show that there is a substantial risk that Athene will fail, however, Plaintiffs rely primarily on allegations comparing Athene's characteristics and practices to those of other annuity providers. Even accepting these allegations as true, I am not persuaded that Plaintiffs have plausibly pled that default by Athene is "actual or imminent … likely to occur soon," *Food & Drug Admin.*, 602 U.S. at 381, or "*certainly* impending," *Clapper*, 568 U.S. at 409. At best, these allegations show that Athene may be more likely to fail than other annuity providers. Failure by Athene may not result in the nonpayment of Plaintiffs' pension benefits in any event because of protections still afforded them following the PRT including that provided by the SGAs. *See Clapper,* 568 U.S. at 410 ("… respondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending.").

The fact that Athene has neither defaulted nor missed any benefit payments owing to Plaintiffs since it assumed payment obligations under the PRT over four years ago underscores that the alleged future injury to Plaintiffs of unpaid benefits is not imminent or certainly impending as required for there to be an injury in fact for Article III standing. Accordingly, the alleged increased risk that Plaintiffs'

pension benefits may be unpaid in the future based on default by Athene fails to demonstrate a sufficient injury in fact to support Article III standing.

**3. Standing Independent of Economic Harm**

Plaintiffs argue that the common law of trusts supports their right to recover "at least disgorgement, regardless of economic harm." Opposition at 15. In *Thole,* the Supreme Court rejected the plaintiffs' attempt to draw an analogy with trust law to show that they need not have not suffered any monetary losses to have Article III standing because "participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust." *Thole*, 590 U.S. at 542.

Plaintiffs argue that this reasoning in *Thole* was case specific and is inapplicable here because "Plaintiffs' annuity contracts and related rights *do* belong to them," whereas the plaintiffs in *Thole* remained participants in a defined-benefits plan after the alleged mismanagement with no equitable or property interest. Opposition at 16. But, as in *Thole* and in contrast to trust beneficiaries, the amount of Plaintiffs' pension benefits is fixed and will not change regardless of whether they are covered by the Plan. *Id.* at 543. *See also Winsor v. Sequoia Benefits & Ins. Servs., LLC,* 62 F.4th 517, 527-529 (9th Cir. 2023) (finding that *Thole* precluded the theory of ERISA welfare benefits plan participants with fixed set of benefits that their equitable ownership in plan's trust fund gave them standing to pursue relief such as disgorgement). Furthermore, Plaintiffs' alleged injury is not to any rights they have under the annuity contracts with Athene but rather to rights they purportedly had under the Plan.

Nor does the case law cited by Plaintiffs in support of this theory of standing dictate a contrary result. Two of these cases pre-date *Thole* and did not involve claims by participants in a defined-benefits plan. *See Merrimon v. Unum Life Ins. Co. of Am.,* 758 F.3d 46, 52-53 (1st Cir. 2014) (holding that plaintiff beneficiaries of ERISA-governed group life insurance policies had constitutional standing for insurer's alleged wrongful retention of benefits, in part, because such a result was consistent with the common law of trusts); *Edmonson v. Lincoln Nat'l Life Ins. Co.,* 725 F.3d 406, 417 (3d Cir. 2013) (beneficiary of ERISA-governed life insurance policy seeking disgorgement of profits suffers an injury-in-fact where the beneficiary, as opposed to the plan, has an individual right to the profits). The other case, *Peters v. Aetna Inc.,* 2 F.4th 199 (4th Cir. 2021), involved a self-funded health care plan, not a defined benefits plan with a fixed set of benefits, and is therefore less analogous to this case than *Thole.*

Pursuant to *Thole* then, I conclude that Plaintiffs may not rely on trust law to establish that they have Article III standing to seek disgorgement and declaratory and injunctive relief.

**4. Statutory Standing**

Plaintiffs argue that they have standing under 29 U.S.C. §1132(a)(9) even if they are unable to satisfy the requirements for Article III standing. Section 1132(a)(9) provides a right to obtain "appropriate relief" for ERISA violations relating to the "purchase of an insurance contract or insurance annuity in connection with termination of an individual's status as a participant covered under

a pension plan" by "any individual who was a participant or beneficiary at the time of the alleged violation." This argument is also foreclosed by *Thole.*

In rejecting the plaintiffs' argument for standing based on causes of action for plan participants under §§ 502(a)(2) and (3) of ERISA, 29 U.S.C. §§ 1132(a)(2), (3), the Supreme Court stated that "the cause of action does not affect the Article III standing analysis." *Thole,* 590 U.S. at 544. Rather, the Supreme Court "has rejected the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *Spokeo*, 578 U. S. at 341). Thus, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (quoting *Spokeo, supra*).

I have already concluded that Plaintiffs have failed to plausibly allege a sufficient concrete injury-in-fact under Article III. Plaintiffs cannot rely on the cause of action provided for in §1132(a)(9) to cure this defect.

Because Plaintiffs have failed to plausibly allege an injury in fact, the Lumen Defendants are entitled to the dismissal of the claims asserted in the AC for lack of standing under Article III.

**B. Failure to State a Claim under Fed. R. Civ. P. 12 (b)(6)**

Having determined that the Lumen Defendants are entitled to the dismissal of the AC for lack of standing under Article III, I decline to address the Lumen Defendants' arguments that they are also entitled to the dismissal of Plaintiff's claims failure to state a claim under Rule 12(b)(6).

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the Lumen Defendants' Motion to Dismiss Amended Complaint [ECF No. 72] is GRANTED.

It is further ORDERED that Plaintiffs' claims against the Lumen Defendants are DISMISSED WITHOUT PREJUDICE.

Dated: September 1, 2026 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE